**Richard Paul MILLER,
Plaintiff-Appellee,**

v.

**The UNITED STATES of America,
Defendant-Appellant.**

**No. 78–1160.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1978.

Decided May 9, 1979.

---

7. The court's instructions concerning the conspiracy count are not challenged; in any event they were adequate.

Eloise Davies, App. Section, Civ. Div., Dept. of Justice, Washington, D. C., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendant-appellant.

Herbert P. Veldenz, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Circuit Judge, KILKENNY, Senior Circuit Judge,* and BAUER, Circuit Judge.

BAUER, Circuit Judge.

In this civil action arising under the Federal Tort Claims Act, the district court awarded Richard P. Miller one million dollars for injuries he sustained in a diving accident at the Crab Orchard National Wildlife Refuge in southern Illinois. The United States appeals from the lower court's judgment on the issue of liability. We affirm the decision for the reasons noted below.

As a first step, we must briefly outline the relevant facts. The Crab Orchard National Wildlife Refuge is owned by the United States and administered by the Department of the Interior. Within the refuge is a 7,000 acre lake, approximately two-thirds of which is open to the public for water-related activities such as boating, fishing, swimming and water skiing.

The accident in question occurred at a boat dock on the far west end of the lake. The dock area is served by a paved road from one of the major thoroughfares around the lake. It also includes a paved ramp that runs into the lake so that boats may be launched off trailers, a restroom facility, a mowed grassy area, a wooden pier that extends 50 feet into the water, and two paved parking areas. On the road that enters the dock, there is a sign that reads "Boat Launching." The area is not authorized for swimming or diving, but, at the time of the accident, there were no signs to that effect. The pier is not equipped with a swimmer's ladder or raft.

On May 23, 1972, twenty-year old Richard P. Miller arrived at the dock with a group of friends who had been searching for a place to go swimming. A swimmer and diver for most of his life, Miller had never been to the dock area before the day of the accident. Upon arrival, he removed his tank top and sandals, and walked on the pier to a point that was approximately ten

---

* The Hon. John F. Kilkenny, Senior Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

feet from its end. The lake bottom at this point was not visible due to the murky water. Miller saw one man in the water toward the end of the pier who appeared to be treading water. In addition, he saw two or three people in the water along the left side of the pier about twenty feet from shore. After someone shouted that the water was "fine," Miller dove into the lake from the left side of the pier. The water depth, however, was only about three feet, and he apparently struck his head on the lake bottom. Miller is now a quadriplegic.

The threshold legal issue on appeal concerns the applicability of the Illinois Recreational Use of Land and Water Areas Act, Ill.Rev.Stat. ch. 70, §§ 31–37. The Act was passed "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." § 31. Accordingly, it provides that a landowner who permits his land to be used for recreational purposes has no duty of care to keep the premises safe for recreational use or to warn those who enter his land for recreational purposes of any dangerous condition thereon. § 33. However, the Act does not limit the landowner's liability for "willful or malicious failure to guard or warn against a dangerous condition." § 36(a).

■ On appeal, the United States argues that a private individual who operates a recreational facility similar to Crab Orchard Wildlife Refuge would be entitled to the protection of the Recreational Use of Land and Water Areas Act. If this is a correct reading of the law, then, under the Federal Tort Claims Act, the United States would be entitled to the same protection, 28 U.S.C. § 2674.

The district court found, however, that the United States' liability is governed by the Recreational Area Licensing Act, Ill. Rev.Stat. ch. 111½, §§ 761–785, rather than the Recreational Use Act. Noting that the two statutes should be read *in pari materia*, the court concluded that the Licensing Act applies to areas such as the Crab Orchard facility that are maintained primarily for recreational purposes, while the Recreation-

al Use Act applies only to lands that are used on a "casual basis" for recreational purposes.

In our view, a fair reading of the statutes supports this construction. As was noted earlier, the central purpose of the Recreational Use Act is "to encourage owners of land *to make land and water areas available to the public* for recreational purposes . . . ." By contrast, the Licensing Act applies to areas of land that are specifically maintained for recreational use:

"As used in this Act, unless the context requires otherwise:

(a) 'Recreational Area' is any area of land where 1 or more tents, cabins, recreational vehicles or other permanent or non-permanent type shelters are erected and maintained for 10 or more persons for 7 or more consecutive days or 10 more days during a calendar year for recreational activities, or camping; or where space for 10 or more persons for 7 or more consecutive days or 10 or more days during a calendar year for recreational activities, camping or temporary parking of recreational vehicles is furnished either free of charge or for revenue purposes, for the placing of such tents, cabins, recreational vehicles or other permanent or non-permanent type shelters; or where space for recreational activities or camping is permitted for 10 or more persons for 7 or more consecutive days or 10 or more days during the calendar year either free of charge or for revenue purposes without shelters of any kind, and it shall include any structure, tent, vehicle, enclosures, recreational vehicle facility or equipment related or used or intended for use as a part of such recreational area."

Ill.Rev.Stat. ch. 111½, § 762(a). We agree with the district court, then, that the two statutes should be read *in pari materia*, and that the Recreational Use Act does not apply to areas such as the Crab Orchard facility that are primarily maintained for recreational use. Accordingly, the United States is not entitled to the protection of that act.

■ The central question thus becomes whether the United States breached a duty of care to the appellee. In our view there is

credible evidence to support the district court's finding that the government was negligent in failing to post "no swimming" or "no diving" signs at the west end boat dock. On this point, the following facts are significant: (1) the boat dock was an improved area with restrooms, a wooden pier and two paved parking areas; (2) the pier extended 50 feet into the lake; (3) the water was shallow but murky; (4) the appellant was aware of the water depths; (5) the appellant knew that individuals had previously used the boat dock area for swimming and wading; (6) the appellant's own safety plan recommended that "warning signs giving notice that swimming is permitted only at designated beaches should be erected at all unsupervised locations where visitors are likely to swim." Under these circumstances, we cannot say the district court erred in concluding that the United States "did not act with reasonable care when it failed to post any warnings or take any precautionary measures with respect to swimming and diving at the west end boat dock."

The district court also rejected the United States' claim that Miller was contributorily negligent as a matter of law. The court reasoned as follows:

"Plaintiff approached an improved area by way of a paved access road. There was a parking lot. There were wash room facilities. There was a path to the pier. The boat launch was separate and not visible from the pier. The pier extended out into the water 50 feet. The water near the shore was clear and plaintiff observed that the bottom was sandy and sloped. People were in the water about a third of the way out with the water at various points on their bodies. There was a man off the end of the pier in the water to his shoulders who appeared to be treading water. There were people at the end of the pier of whom plaintiff enquired about the water who responded to him that it was 'fine.' One of the plaintiff's friends had assured him that the spot was 'perfect' for swimming. The evidence shows that her opinion was based upon her own experience there when the water was at least 4 to 4½ feet

deep. Most significantly, there were no warnings of any kind.

Plaintiff's dive was not a deep one. The risk was a hidden one of which plaintiff had no comprehension or awareness." (Citations omitted.)

On these facts, we are not persuaded that Miller was contributorily negligent as a matter of law. Accordingly, the judgment of the lower court is

Affirmed.