ANTHONY LOGAN *et al.*, Plaintiffs-Appellants, v. OLD ENTERPRISE FARMS, LTD., *et al.*, Defendants-Appellees.—ANTHONY LOGAN *et al.*, Plaintiffs-Appellees, v. OLD ENTERPRISE FARMS, LTD., *et al.*, Defendants-Appellants.

Fifth District Nos. 5—87—0532, 5—87—0759 cons.

Opinion filed September 1, 1989.—Rehearing denied October 19, 1989.

John L. McMullin and John P. Cunningham, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellant O'Fallon United Church of Christ.

Michael J. Reagan and Alvin C. Paulson, both of Kassly, Bone, Becker, Dix, Tillery & Reagan, P.C., of Belleville, for Anthony Logan.

Stephen W. Thomson and Curtis L. Blood, both of Reed, Armstrong, Gorman, Coffey, Thomson & Gilbert, of Edwardsville, for Old Enterprise Farms, Ltd.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant O'Fallon United Church of Christ (hereinafter Church) appeals from an order of the circuit court of St. Clair County denying its motion for summary judgment. Plaintiff Anthony Logan, a minor, along with his mother, Jo Ann Berry, appeal from an order of the circuit court of St. Clair County granting summary judgment in favor of codefendant Old Enterprise Farms, Ltd. (hereinafter Farms). Additionally, the trial court found that the Recreational Use of Land and Water Areas Act (the Act) (Ill. Rev. Stat. 1983, ch. 70, pars. 31 through 37) was the statute applicable to the land in question. In this cause, the parties raise a number of issues. We find the determining issues to be (1) whether the trial court erred in denying Church's motion for summary judgment and in granting Farms' motion for summary judgment, and (2) whether the Act (Ill. Rev. Stat. 1983, ch. 70, pars. 31 through 37) is the applicable statute governing defendants' liability to plaintiffs. We affirm the order of the circuit court of St. Clair County denying Church's motion for summary judgment, reverse and remand the order of the circuit court of St.

Clair County granting Farms' motion for summary judgment, and reverse and remand the order of the circuit court of St. Clair County making the Act applicable to both defendants.

Plaintiff Anthony Logan, a 15-year-old boy, was left a quadriplegic after he fell from a tree to which a rope swing was attached. The injury occurred on property owned by Farms. At the time, plaintiff was attending a picnic organized by members of the Church's consistory.

Farms is a corporation owned by three families, the Ellerbrakes, the Schrivers, and the Aregoods. It is located off what is commonly known as the Troy-O'Fallon Road in St. Clair County. Farms was formed in 1972, after the three families acquired approximately 122 acres of land. The land is divided into six separate plats, each of which is taxed separately. The injury occurred on a separate 1.36-acre tract which is known as the "old school house lot." As part of the sales agreement, the previous owner had the exclusive right for 10 years to use the school house which sits on the 1.36-acre tract. In 1982, Farms gained exclusive control over the school house which has been used as a clubhouse. According to two of the owners, Richard Ellerbrake and Jack Aregood, this 1.36-acre tract, complete with lake, is used primarily, if not exclusively, for recreational purposes.

Jack Aregood, a shareholder in Farms, was an associate pastor at the Church. Aregood used the clubhouse on different occasions in connection with church activities, including parties for junior high and senior high youth fellowships. The lake was used at least two to three times per week during the summer by members of Farms.

On August 7, 1983, plaintiff, Anthony Logan, accompanied his parents to a church picnic for consistory members. Reverend Aregood had offered use of the lake and the clubhouse for the church picnic. All activities in conjunction with this picnic occurred on the 1.36-acre tract known as the school house lot. Those in attendance at the picnic were welcome to use the lake to swim. There was also a rope swing attached to a tree which was used to swing into the lake. The tree was within the 1.36-acre lot. Plaintiff estimated he had been to this property on at least 24 previous occasions during the summer of 1983 with Christopher Ellerbrake, a friend, whose parents were also shareholders in Farms. Plaintiff had used the rope swing several times prior to the day of his injury. On these occasions, the rope swing would periodically become entangled in the upper branches of the tree upon release by the person jumping from the swing. Plaintiff estimated that the rope swing would get caught in the branches

about 1 out of every 5 to 10 swings or two to three times per visit. Plaintiff had seen various boys climb the tree in the past to untangle the rope swing. Because the rope would get caught in the tree, a piece of yellow plastic had been placed around the rope and limbs had been cut in an attempt to rectify this problem.

Christopher Ellerbrake, 17 years old at the time of plaintiff's injury, was aware of the propensity for the rope to become entangled. In fact, he had used a hand saw to cut some branches from the upper portion of the tree to stop the rope from becoming entangled. At one time, he had tied a piece of rope around a metal bolt in order to throw that at the rope swing in the hopes of knocking the swing from the branches. This method was discarded when, during an attempt to free the rope swing, the bolt fell out of the rope and hit him in the face, causing him to receive a number of stitches. Christopher's father, Richard, knew of his son's injury and knew that the rope could get entangled. Plaintiff himself had been injured on a previous occasion when using the rope swing. Plaintiff stated that he had hit his knee on a metal post located near the rope swing while swinging on the rope. Ken Shepherd, another friend of Christopher Ellerbrake's, had also injured his leg on the rope swing in the past.

On the day of the accident, a wooden ladder was placed at the base of the tree to which the rope swing was attached. The ladder was owned by Farms. Plaintiff stated that the ladder had been up against the tree each time he had visited the clubhouse. The rope swing was hanging freely when plaintiff arrived on the premises. Plaintiff used the swing 5 to 10 times before it got caught in the tree. No one else used it during the time plaintiff used it. His parents watched him use the swing and did not caution him about using it. When the rope got caught, plaintiff waited a few minutes before attempting to retrieve it. Plaintiff then climbed the ladder, as he had seen others do, got up in the tree, and loosened the rope. The rope then became entangled in some lower branches. Plaintiff's brother, Victor Logan, then attempted to completely free the rope. Plaintiff began his descent from the tree. Before he reached the ladder, he fell and woke up on the ground. Plaintiff does not know how he fell.

Plaintiff's parents were less than 22 feet away from the tree. Plaintiff's mother saw him swing approximately three to five times prior to the accident. She saw the rope get caught in the tree, but did not warn or caution her son about climbing the tree. Plaintiff's stepfather saw plaintiff swing on the rope several times before he was injured. He did not consider the swing to be dangerous. Before plaintiff climbed the ladder, plaintiff's stepfather cautioned him to be

careful. According to plaintiff's stepfather, he made some cautionary remarks because the ladder looked steep to him. Reverend Aregood watched plaintiff as he climbed the ladder. He did not attempt to stop plaintiff, but stated that he might have told him to be careful. Reverend Aregood stated that he had seen the swing get caught in the branches on previous occasions. In the past, he had encouraged those using the swing to let the wind blow down the rope. In addition, Reverend Aregood stated that he had taken down a rope swing earlier in the summer which was located in the same tree when in his estimation it became unsafe due to fraying. A few weeks later, he found that a new rope swing had been put up in the tree. When he saw the new rope, he pulled on it to make sure that it was fastened securely to the tree.

Plaintiff stated that this was not the same rope swing that had always been used. However, Christopher Ellerbrake, who was the most frequent user of the rope swing, and who had put the rope swing up in the tree, said that this was the only rope that had ever been in the tree.

Several picnickers witnessed the fall or at least plaintiff lying on the ground after the fall. Neither plaintiff nor his family knew why he fell. One independent witness, Mark Everett, a consistory member, testified that he clearly saw a branch approximately 4 to 4½ inches thick snap at the trunk when plaintiff stepped on it, thereby causing plaintiff to fall. Other witnesses testified that they heard a loud crash which might have been the breaking of the branch, while still others insisted that they did not see or hear a branch break prior to plaintiff's fall. All witnesses testified that the tree was in good shape and did not appear to have dead branches. The only thing that is clear is that it will most likely never be known why plaintiff fell from the tree.

Plaintiff's first amended complaint alleged negligence on the part of Farms in failing to maintain the premises and the rope swing in a proper and safe condition and failing to warn plaintiff of the dangerous condition. As against Church, plaintiffs alleged that it negligently failed to provide adequate supervision of the picnic area, plaintiff, and the rope swing area where the injury occurred, and failed to warn plaintiff of the dangerous conditions existing on the premises. Church filed a motion for summary judgment. Farms filed an alternative motion for summary judgment or a motion to dismiss. Additionally, Farms argued that the Act (Ill. Rev. Stat. 1983, ch. 70, pars. 31 through 37) was applicable and limited its liability. Plaintiffs filed memoranda in opposition to the motions for summary judgment filed

by both defendants. Responses to plaintiff's memoranda were filed by both defendants.

On May 6, 1987, the trial court heard arguments on motions for summary judgment. The court entered an order finding that the Act applied, and on June 22, 1987, granted the motion for summary judgment filed by Farms. On September 29, 1987, the trial court entered an order denying Church's motion for summary judgment. Both cases have been consolidated for purposes of appeal.

The first issue on appeal is whether summary judgment was a proper disposition of the case for either of the defendants. We must first point out that we can find nothing to distinguish these two defendants. We believe that both defendants are similarly situated so as to make the trial court's alternative rulings on defendants' motions for summary judgment inconsistent. As similarly situated defendants, the trial court should have granted summary judgment for both defendants or denied summary judgment for both defendants.

Defendants contend that this case involves a simple, patent danger of falling and, therefore, neither defendant owes a duty to plaintiff. Defendants argue that there is no duty on the part of an owner or occupier of land to warn children of the obvious risk of falling out of a tree. Plaintiffs respond that both defendants have wrongfully categorized this cause of action as one of simply falling, arguing that there are factual issues as to the safety of the rope swing, the safety of the tree, and the safety of the combination of these structures to warrant the denial of defendants' motion for summary judgment. We agree.

 The standards governing whether a summary judgment should be granted are set forth in section 2—1005(c) of the Code of Civil Procedure, which states in pertinent part:

> "The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1105(c).)

Illinois courts have repeatedly emphasized that the purpose of summary judgment is not to try an issue of fact, but to determine whether a triable question of fact exists. (*Hadley v. Witt Unit School District 66* (1984), 123 Ill. App. 3d 19, 23, 462 N.E.2d 877, 881-82.) Summary judgment is a drastic remedy. It must be awarded with caution in order to avoid preempting a litigant's right to trial by jury

or his right to fully present the factual basis of a case where a material dispute may exist. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 998, 473 N.E.2d 531, 534.) In passing on a summary judgment motion, the trial court is therefore required to construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent. (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344.) Only if these materials establish that the movant's entitlement to summary judgment is clear and free from doubt may such a motion be granted. *Freemont Indemnity Co. v. Special Earth Equipment Corp.* (1985), 131 Ill. App. 3d 108, 112, 474 N.E.2d 926, 930.

In the instant case, a rope swing was maintained on the premises. Two owners of Farms, John Aregood and Richard Ellerbrake, were aware of the rope's existence. The depositions clearly establish that the rope would frequently get tangled in the tree, approximately and conservatively every 1 out of 10 swings, making it necessary for someone either to climb up the tree to untangle it or wait for the wind to blow it free. Reverend Aregood admitted that he had seen the rope get caught in the upper branches of the tree and had encouraged those using the swing to let the wind blow it down. Furthermore, there was deposition testimony that others had been hurt on the swing, not only while swinging, but also while attempting to get the rope untangled. There are also questions concerning the condition of both the rope swing and the tree to which the rope swing was attached. One member of the consistory board, Mark Everett, observed the branch on which plaintiff was standing break at the trunk causing plaintiff to fall. This witness states that plaintiff was very cautious while in the tree. Reverend Aregood stated that he had previously removed a rope swing which he considered unsafe from the same tree. He explained, "It had knots in it. Just didn't appear good and I didn't think it was a good place for it to be so I just took it down." An affidavit was also filed on behalf of plaintiff by M. Alexander Gabrielsen in opposition to defendants' motion for summary judgment. Dr. Gabrielsen holds a Ph.d. from New York University, where he also taught for 30 years and served as director of professional recreation curricula. He is also chairman of the Educational Commission of the Council for National Cooperation in Aquatics as well as aquatic safety consultant to that organization. He has consulted on approximately five rope swing cases. It is his opinion that there are inherent and foreseeable dangers regarding the rope swing at Farms.

■ These facts do not indicate, as defendants urge, that there

was merely a danger of falling from a tree. An instrumentality, although in and of itself not dangerous, may become dangerous when joined with other nondangerous instrumentalities or surroundings. (*Novak v. C.M.S. Builders & Developers* (1980), 83 Ill. App. 3d 761, 764, 404 N.E.2d 918, 921; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836.) In the instant case, it may well be that the combination of the tree, which alone would not be a dangerous instrumentality, the rope swing, the ladder, and the lake caused plaintiff's injuries. When viewing the foregoing facts in a light most favorable to plaintiff, we cannot say, at this stage of the proceedings, as a matter of law, that no genuine issue of material fact exists.

Defendants also rely on four cases where courts have held that the landowner owes no duty to a child who falls out of a tree and who sustains injuries. (*Batzek v. Betz* (1988), 165 Ill. App. 3d 399, 519 N.E.2d 87; *Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 482 N.E.2d 1061; *Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, 421 N.E.2d 566; *Merkousko v. Janik* (1973), 14 Ill. App. 3d 343, 302 N.E.2d 390.) In *Merkousko*, the amended complaint alleged that the plaintiff, a seven-year-old boy, sustained injuries when he fell from a tree, located on the defendant's property, onto a cement public sidewalk. It was alleged that the defendant negligently piled dirt from an excavation around the trunk of the tree, thus enabling the plaintiff to climb an otherwise unscalable tree. Defendant allegedly knew that the children frequented the vicinity in which his property was located in the course of walking to and from a nearby grade school. It was alleged defendant breached a duty to plaintiff by not piling the dirt away from the tree or by not warning the plaintiff about the perils of climbing the tree. On review, the trial court's ruling was affirmed. The appellate court held the danger, if any, was the simple danger of falling, noting that there was no allegation in the amended complaint that the combination of the tree, the pile of dirt, and the sidewalk either constituted a defective structure or concealed dangerous condition. (14 Ill. App. 3d 343, 302 N.E.2d 390.) In the instant case, plaintiff's amended complaint does allege a defective structure as well as a concealed dangerous condition in the rope swing. The case is further distinguishable in that in *Merkousko* the plaintiff was a child trespasser while in the instant case plaintiff was an invitee.

In *Bazos*, a 10-year-old girl fell from a tree on the defendant's property and fractured her arm. The amended complaint alleged that the defendants had permitted a picnic table and bench to

be placed in close proximity to a low-extending limb of a tree, that the defendants permitted numbers of minor children to play thereon and jump from the table to the limb to swing and that defendants knew or should have known that this dangerous activity had gone on for some period of time. The trial court granted defendant's motion to strike. The appellate court affirmed, noting that the plaintiff must have appreciated the risk of her activities. Furthermore, the court held that liability would not attach despite the allegations that defendants permitted the activity. *Bazos*, too, is distinguishable from the case at bar. The *Bazos* court found that the picnic table and bench did not become inherently dangerous merely because the children abused them by using them for purposes other than those for which they were intended, specifically, to climb a tree. (*Bazos*, 96 Ill. App. 3d 526, 421 N.E.2d 566.) However, in the instant case, the rope swing was attached to the tree as an invitation to use it. A ladder was also at the base of the tree. Reverend Aregood had taken one swing down when he perceived it to be unsafe. Here, the rope swing was being used for its intended purpose, to swing for recreational purposes. There is a factual question as to whether it was inherently dangerous due to its propensity to become entangled in the tree branches.

In *Batzek*, a 14-year-old boy fell from a tree located on defendant's property, rendering himself a quadriplegic. The plaintiff traveled to defendant's ranch to go camping. During the night, the plaintiff was awakened by a thump on the top of the camper. The next morning he discovered a dead limb had fallen on the camper and he noticed that the limb fell from a tree which had several dead limbs hanging from it. The plaintiff informed a campground employee about the trees and branches, who responded that he would take care of it. Later, when nothing had been done, the plaintiff decided to climb the tree and remove the branches himself. As he was climbing down the tree, one of the branches snapped, and he fell to the ground, landing flat on his back. The *Batzek* court held, as a matter of law, the plaintiff failed to establish a duty on the part of the defendant. The *Batzek* court analogized the case to others where a landowner had no duty to remove or take other precautions against dangers inherent in natural accumulations of ice and snow. The court based its ruling, however, on its finding that the plaintiff would be expected to appreciate the obvious risk involved in climbing a tree. Since the risk was obvious, the court held that there was no reasonably foreseeable risk of harm and, thus, no duty on the part of the defendant to protect against the defendant's actions in climbing a

tree. (*Batzek*, 165 Ill. App. 3d 399, 519 N.E.2d 87.) The present case is also in no way analogous to those cases dealing with dangers inherent in natural accumulations of ice and snow. There is nothing natural about a rope swing in a tree with several branches cut by a saw in an attempt to stop the rope from becoming entangled. Nor is it natural to place a ladder at the base of the tree as an open invitation to climb the tree in order to free the rope.

Likewise, we distinguish *Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 482 N.E.2d 1061. In *Newby*, the plaintiff was a 17-year-old female who fell from a tree on school property. The amended complaint alleged that the defendant was guilty of wilful and wanton misconduct by allowing a field house to be constructed on its premises immediately adjacent to a tree, which high school students had used on many previous occasions to gain access to the field house roof. In an attempt to limit access to the field house roof, the defendant had trimmed the tree and altered it so as to make climbing more difficult. The plaintiff argued the altered and trimmed tree in close proximity to the field house on a public school playfield constituted an extraordinary risk of harm, and the defendant knew or should have known that such circumstances were likely to cause injury to high school children. In affirming the trial court's granting of the defendant's motion to dismiss, the appellate court noted that the plaintiff failed to sustain its burden of showing allegations that a tree in close proximity to a fieldhouse roof created a dangerous condition of which the defendant should have been aware. Further, even if the tree was known to the school board to be used by children to climb secretly at night to paint graffiti on the fieldhouse roof, the plaintiff could not be said to fall within the class of persons for whom the school district's grounds were intended to be used. The *Newby* court also noted that the dismissal of the complaint was entered in accordance with public policy that tort liability of public entities be limited. (136 Ill. App. 3d 92, 482 N.E.2d 1061.) In the instant case, plaintiff was an invitee on the land and could reasonably have been expected to use the rope swing. The church group was invited to have access to the lake, including the rope swing. Additionally, we are not dealing with a public entity, but a privately owned corporation and a church.

■■ Finally, Church argues that the responsibility for a child's safety lies primarily with its parents and, therefore, no liability can be imposed upon defendants. While it is true that a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon (*Driscoll v.*

*C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 219 N.E.2d 483), it does not follow that merely because a parent is present when a child is injured, the owner or occupier of land is free from liability.

Defendants cite *Keller v. Mols* (1984), 129 Ill. App. 3d 208, 472 N.E.2d 161, in which the parents of a 14-year-old boy who was injured when struck in the eye by a plastic hockey puck during a game of floor hockey at a neighbor's home brought a negligence action against the neighbors. The plaintiff's mother could observe the neighbor's patio from her kitchen and frequently saw the boys playing on the patio. Neither the plaintiff's mother nor father told the plaintiff not to play floor hockey or warned him that the game should be played only with protective equipment. The *Keller* court affirmed the trial court's dismissal of the complaint, noting that the responsibility for a child's safety lies primarily with its parents. (129 Ill. App. 3d 208, 472 N.E.2d 161.) Defendants analogize the *Keller* case to the case at bar. Plaintiffs' mother and stepfather observed plaintiff climb the tree and did not consider it to be a dangerous activity. They did not prevent their child from climbing the tree nor did they warn him of any dangers. We find the two cases distinguishable. In *Keller*, it was the activity of playing hockey that was dangerous, while in the instant case, according to the pleadings, it was not the activity of climbing the tree, but a combination of the rope swing, the tree, the ladder, and the lake which formed an inherently dangerous structure. We find that there is a factual dispute and reasonable minds could differ as to whether the combination of the rope swing, tree, ladder and lake created an unreasonably dangerous condition. We move now from a dispute over the facts of the instant case to the law which was applied by the trial court.

The second and final issue is whether defendants are entitled to seek protection under the Act (Ill. Rev. Stat. 1983, ch. 70, pars. 31 through 37). Defendants, while denying most of the allegations of the complaint, also raise as an affirmative defense the immunity created by the Act. Both defendants argue that the Act is the applicable statute under the facts of this case. Church contends that the trial court applied the correct Act, but should have entered summary judgment for both defendants, as Church is also protected by the Act. Plaintiffs respond that the Act is inapplicable because the 1.36-acre tract on which the accident occurred was used exclusively for recreational purposes and is taxed separately, thereby, according to plaintiffs, making this subdivided land which is excluded under the Act. Plaintiffs also contend that the correct statute to apply in the instant case is the Recreational Area Licensing Act (Ill. Rev. Stat.

1983, ch. 111½, pars. 761 through 785). Again, we find no reason to allow Farms the protection of the Act while to deny this protection to the Church. Either both defendants should be protected by this Act or neither should be protected. We hold that neither should be allowed the protection of the Act.

The relevant portions of the Act (Ill. Rev. Stat. 1983, ch. 70, pars. 31 through 34, 36) state:

"31. Purpose

§1. The purpose of this Act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." (Ill. Rev. Stat. 1983, ch. 70, par. 31.)

"32. Definitions

§2. As used in this Act, unless the context otherwise requires:

(a) 'Land' means land located outside the corporate limits of a city, village or incorporated town and not subdivided into blocks and lots and includes roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

(b) 'Owner' includes the possessor of any interest in the land, a tenant, lessee, occupant or person in control of the premises.

(c) 'Recreational purpose' includes, and is limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, snowmobiling, motorcycling, camping, picnicking, hiking, cave exploring, nature study, water skiing, water sports, bicycling, horseback riding, and viewing or enjoying historical, archaeological, scenic or scientific sites.

(d) 'Charge' means the admission price or fee asked in return for invitation or permission to enter or go upon the land." (Ill. Rev. Stat. 1983, ch. 70, pars. 32(a), (b), (c), (d).)

"33. Duty of care or warning of dangerous condition

§3. Except as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." (Ill. Rev. Stat. 1983, ch. 70, par. 33.)

"34. Effect of invitation or permission

§4. Except as specifically recognized by or provided in Section 6 of this Act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such person or any other person who enters upon the land." (Ill. Rev. Stat. 1983, ch. 70, pars. 34(a), (b), (c).)

"36. Wilful or malicious acts—Injury suffered by persons paying admission

§6. Nothing in this Act limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease is not a charge within the meaning of this section." Ill. Rev. Stat. 1983, ch. 70, pars. 36(a), (b).

Also in effect in Illinois at the time of the occurrence in question was the Recreational Area Licensing Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 761 through 785). This Act contemplates comprehensive safety and health regulations in respect to persons who operate recreational areas which are defined as follows:

"(a) 'Recreational Area' is any area of land where 1 or more tents, cabins, recreational vehicles or other permanent or non-permanent type shelters are erected and maintained for 10 or more persons for 7 or more consecutive days or 10 or more days during a calendar year for recreational activities, or camping; or where space for 10 or more persons for 7 or more consecutive days or 10 or more days during a calendar year for recreational activities, camping or temporary parking of recreational vehicles is furnished either free of charge or for revenue purposes, for the placing of such tents, cabins, recreational vehicles or other permanent or non-permanent type shelters; or where space for recreational activities or camping is

permitted for 10 or more persons for 7 or more consecutive days or 10 or more days during a calendar year either free of charge or for revenue purposes without shelters of any kind, and it shall include any structure, tent, vehicle, enclosures, recreational vehicle facility or equipment related or used or intended for use as a part of such recreational area.

(b) 'Recreational Activities' include, but are not limited to hunting, fishing, swimming, boating, camping, racing, picnicking, hiking, pleasure driving, nature study, water skiing, festivals, public gatherings and visiting historical, archaeological, scenic or scientific sites, or for any purpose, including but not limited to educational, vocational and religious activities and assemblies." Ill. Rev. Stat. 1983, ch. 111½, pars. 762(a), (b).

In *Miller v. United States* (N.D. Ill. 1976), 442 F. Supp. 555, where the plaintiff brought an action under the Federal Tort Claims Act (28 U.S.C. §2674 (1982)) to recover against the United States for injuries he sustained while diving into shallow water of a lake at the Crab Orchard National Wild Life Refuge in Illinois, the United States District Court explained that the entire Illinois legislative scheme should be read *in pari materia.*

"When it is, it becomes clear that the Recreational Use of Land and Water Areas Act is intended for those who permit open lands to be used recreationally on a casual basis. But those who hold their property out to the public for recreational purposes, and maintain their property for recreational use by the number of persons that are prerequisite to the application of the Recreational Area Licensing Act, they are subject to the provisions of the latter and not entitled to the asserted protection of the former." (442 F. Supp. at 561.)

This decision was affirmed by the United States Court of Appeals in *Miller v. United States* (7th Cir. 1979), 597 F.2d 614. However, in the instant case, we do not believe that the Act has any relevancy. We believe this to be true for two reasons; first, because the land was used almost exclusively for recreational purposes, and second, because the land was not opened up to the general public.

■ Both Richard Ellerbrake and Reverend Aregood agreed that the 1.36-acre "school house lot" is used primarily, if not exclusively, for recreational activities. The previous owner of the "school house lot" kept a 10-year lease on the school building after sale of the land so that he would have a place in the country to bring his friends for recreational purposes. Since 1982, Farms has continued the previous owner's tradition and kept this area for recreational use. An exami-

nation of the purpose clause of the Act, the substantive provisions of the Act, and those cases interpreting the Act, *Miller v. United States* (N.D. Ill. 1976), 442 F. Supp. 555, *affirmed* (7th Cir. 1979), 597 F.2d 614, and *Stephens v. United States* (C.D. Ill. 1979), 472 F. Supp. 998, reinforces our conclusion that the General Assembly never intended the statute to apply to those whose land is used exclusively for recreational purposes. These owners, including a close corporation, as we have in the instant case, need no incentive of limited liability in order to open up their lands.

Defendants argue that in *Johnson v. Stryker Corp.* (1979), 70 Ill. App. 3d 717, 388 N.E.2d 932, the appellate court refused to follow the restrictive holding of *Miller v. United States* (N.D. Ill. 1976), 442 F. Supp. 555, *affirmed* (7th Cir. 1979), 597 F.2d 614, and instead held that defendants would be allowed the protection of the Act even if the land was used primarily for recreational purposes. While we decline to follow the first district's ruling in *Stryker*, we believe that Church has misinterpreted the *Stryker* decision. We find *Stryker* to mean that the Act will only be applicable to a landowner who permits his land to be used recreationally on a *casual* basis, but will allow a landowner protection even though he did not open up his lands to *all* members of the public. In *Stryker*, the deposition testimony was such that the pond in question was used by at least some school children. These children were supposed to ask for permission and usually did so. There were also signs, one which read, "Swim at your own risk—we are not responsible," the other, "private property—no swimming on holidays—do not litter—pick up your own trash." (*Stryker*, 70 Ill. App. 3d at 719, 388 N.E.2d at 933.) We find *Stryker* distinguishable from the instant case on these facts alone. In the instant case, the land was used almost exclusively for the recreational use of shareholders of Farms and their guests. "No trespassing" signs were placed at the entrance of Farms, and there was a rule among shareholders and their families that the school house lot and the lake were not to be used by anyone unless a shareholder or family member of a shareholder was present. The signs posted near the pond in the *Stryker* case are an invitation to the general public to swim whereas in the instant case, the general public was specifically told that they were not invited through the "no trespassing" signs. Having decided that neither defendant is protected by the Act, we must now decide whether enough people used the school house lot for the requisite number of days in order to trigger the application of the Recreational Area Licensing Act. Ill. Rev. Stat. 1983, ch. 111½, par. 761 *et seq.*

Defendants first argue that plaintiffs have waived the application of the Recreational Area Licensing Act by not arguing it at the trial court level. We find no such waiver. Plaintiffs have not changed any theory of their case. It was defendants' contention that they were absolved of liability under the Act. Plaintiffs are merely responding to the trial court's first order that the Act was applicable, and the trial court's subsequent ruling granting Farms' motion for summary judgment. Further, a review of the record indicates that plaintiffs clearly set forth reasons why the Act did not apply to the facts of the instant case at the trial court level, thereby preserving the issue for appeal.

■■ In applying the facts of the present case to the Recreational Area Licensing Act, whose pertinent parts are previously cited, we cannot say at this point in the proceedings that the factual criteria for application of the Licensing Act have been met. While there was testimony that the "school house lot" was used more than 10 days per year for recreational purposes, there was no indication that it was used by groups of 10 or more for the requisite number of days. We remand for further proceedings, including but not limited to discovery concerning the size of the groups that used these premises. Our holding in no way restricts plaintiffs from pleading any alternative theories of liability besides the Licensing Act.

For the foregoing reasons, we affirm the denial of the circuit court of St. Clair County of summary judgment for defendant United Church of Christ. We reverse and remand the order of the circuit court of St. Clair County granting summary judgment for defendant Old Enterprise Farms, Ltd. We reverse and remand the order of the circuit court of St. Clair County finding the Recreational Use of Land and Water Areas Act applicable to the facts of the instant case.

No. 5—87—0532, Reversed and remanded.
No. 5—87—0759, Affirmed.

WELCH, P.J., and HARRISON, J., concur.