CHARLES PHILLIPS, Plaintiff-Appellant, v. COMMUNITY CENTER FOUNDATION AND THE CHILDREN'S FARM, Defendant-Appellee.

First District (6th Division)   No. 1—91—0871

Opinion filed November 13, 1992.—Rehearing denied December 17, 1992.

---

Rick A. Gleason, of Gleason & Fritzshall, of Chicago, for appellant.

Robert A. Roth, of Keck, Mahin & Cate, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the plaintiff, Charles Phillips, from an order granting summary judgment to the defendant, Community Center Foundation (the Center); the Children's Farm is part of the Center. The plaintiff had filed a personal injury action to recover damages for injuries he suffered when he fell from a horse owned by the Center which he was riding on the Center's property.

The Center is an organization whose mission is "to enable people to develop a well-balanced quality of life and a feeling of wholeness." Reverend Frank Sanders is the executive director of the Center. The Center sponsors various religious, educational and social service programs designed to accomplish its mission, including religious retreats, an environmental education program, three summer camps, a school camp, a folk school program, a social service program dealing with alcoholism, and an educational farm called the Children's Farm. The Children's Farm is located on the east side of the Center's property, across the road from the main community center building.

Samuel Smith was an employee of the Center from March through November of 1986. Smith had completed the Center's "Pathway to Sobriety" program for alcoholic rehabilitation and was then hired by the Center and placed in charge of maintenance. Smith lived in a house on the western portion of the Center's property, across the highway from the Children's Farm. At his evidence deposition, Smith testified that he worked in a supervisory capacity at the Center, overseeing the physical maintenance of the buildings, vehicles and animals. He said that he supervised five to nine other people; he maintained the equipment for the horses, including saddles, and performed maintenance duties inside the barn. (Smith had earlier testified at his discovery deposition that he was not responsible for checking the condition of the horses' equipment.) Smith would sometimes ride the horses himself, and he would allow his son, his wife and his brother to ride the horses.

The plaintiff testified at his discovery deposition that Smith had often stated that he was in charge of everything at the Center, including maintenance and caring for the horses and equipment, and that he was "in charge of the whole place."

Sanders testified at his discovery deposition that Smith was in charge of maintenance of the premises, but had nothing to do with caring for the horses or the saddles and other equipment associated with the horses. He added that Smith's maintenance responsibilities generally would not require him to go into the barn area. The Center's horses were used mainly for the summer camp program; the general public was not allowed to ride the horses. There was a sign on the gate at the entrance to the Children's Farm that said "Open By Reservation Only." Sanders said that neither Smith nor any other employee was allowed to ride or saddle the horses unless Sanders was present.

Contrary to Sander's testimony, Smith testified that he had authority to use or ride the horses himself and that everyone rode the horses on a daily basis. Smith understood that Sanders had given him authority to ride the horses himself and to allow the plaintiff to ride the horses on the date of the accident. He said that Sanders had been present on past occasions when Smith, other employees, and nonemployees had ridden the horses, and Sanders had not told Smith that allowing nonemployees to ride the horses was improper.

The plaintiff's complaint alleged that Smith had invited him to a birthday party for Richard Phillips, the plaintiff's brother, on Sunday, August 10, 1986. The party was held at Smith's residence on the Center's property. During the party, Smith invited the plaintiff, his brother, and several children to ride the horses; they rode the horses for short jaunts through the fields for a period of approximately one hour. Dave Schroeder, another employee of the defendant, was participating in the Pathway to Sobriety Program and was working at the Center that day; he saddled the horse that the plaintiff rode. A cinch strap broke, and the plaintiff was injured when he was thrown from the horse.

Smith testified that the broken cinch strap was worn, dry and old and that he had complained to Sanders about the condition of the equipment on several occasions before the plaintiff's accident. Employees did not regularly inspect the saddles and cinches.

Sanders testified he knew all about cinches and saddles, that he knew that a worn-out cinch strap represented a danger to the rider of the horse and that a cinch strap may have broken before the date of the accident. He knew that the camp was using horses on Sunday.

The Center filed a motion for summary judgment, maintaining that it could not be held vicariously liable for the plaintiff's injuries because Smith was not acting within the course and scope of his employment when he invited the plaintiff to ride the horse. The Center's motion stated that Smith was not acting as its agent when the incident occurred, because Smith's acts were motivated by an intention to serve the personal enjoyment of his family and himself, and not the interests of the Center. Contrary to the plaintiff's contention in this court, the Center did argue that it could not be held directly liable for the plaintiff's injuries under a negligence theory because the plaintiff allegedly was a trespasser. Last, the Center maintained that it was shielded from liability by the Recreational Use of Land and Water Areas Act (or Recreational Use Act) (Ill. Rev. Stat. 1985, ch. 70, par. 31 *et seq.*).

The trial judge entered summary judgment in favor of the Center stating, "The court has adopted the argument, reasoning and law referred to in defendants' motion for summary judgment, memorandum in support of defendants' motion for summary judgment, and in defendants' reply in support of its motion for summary judgment as the basis for its ruling."

Summary judgment is generally inappropriate when scope of employment is at issue. Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304.) We judge that the evidence in this case does not satisfy the requirements of *Pyne v. Witmer* and that summary judgment was improperly granted.

We will first address the issue of whether the defendant has established as a matter of law that Smith was not acting as the defendant's agent when he invited the plaintiff to ride the defendant's horse. The defendant relies principally on sections 228 and 242 of the Restatement of Agency (Restatement (Second) of Agency §§228, 242 (1958)), *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304, and *Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 481 N.E.2d 840.

■ Section 228 of the Restatement, cited in *Pyne* and *Wilson*, sets forth the criteria to be used in determining whether the conduct of a servant is within the scope of employment. We point out that the comment to section 228 provides that "a master may be liable if a servant speaks or acts, purporting to do so on behalf of his principal, and there is reliance upon his *apparent authority* or he is aided in ac-

complishing the tort by the existence of the agency relation." (Emphasis added.) Restatement (Second) of Agency §228, Comment *a* (1958).

■ Section 242 provides:

"A master is not subject to liability for the conduct of a servant towards a person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment." (Restatement (Second) of Agency §242 (1958).)

Again, we point out that the comment to section 242 provides that "[t]he rule stated in this Section is applied most frequently when a servant entrusted with a custody of a vehicle, without authority or *apparent authority* to do so, permits or invites persons to ride on it. The rule applies also, however, to persons entering land with the permission of an employee." (Emphasis added.) Restatement (Second) of Agency §242, Comment *a* (1958).

The issue in this case, therefore, is whether the record establishes as a matter of law that Smith did not have at least apparent authority to permit the plaintiff to ride the Center's horse.

■ Apparent authority is that authority which a reasonably prudent person, in view of the principal's conduct, would naturally suppose the agent to possess. Acquiescence by the principal in the conduct of the putative agent is sufficient to establish apparent authority. *State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 583 N.E.2d 547.

The defendant relies heavily on the testimony of Sanders and substantially disregards the testimony of Smith. Smith testified that he worked in a supervisory capacity which included his overseeing animals; he maintained the equipment for the horses; and he maintained the saddles used on the horses. He understood that he had the authority to use or ride the horses himself, that this authority had been given to him by Sanders and that he had the authority to allow the plaintiff to ride the horse on the date of the accident. He had saddled the horses on other occasions for other individuals; he would allow other individuals to ride the horses; other employees of the defendant allowed nonemployees to ride the horses on a daily basis in the summer at times; and Smith had seen other employees' friends and relatives riding horses at the Center and other individuals would use the horses several times a week.

■ Smith testified, without objection, that Sanders had to know that everyone rode the horses on a daily basis; *Sanders was present when Smith rode the horses; Sanders did, not say anything regarding the riding of the horses at those times and Sanders was present when Smith would allow other individuals to ride the horses and when other employees of the defendant allowed others to ride the horses.* It is our judgment that a reasonable person could conclude that Sanders had acquiesced in Smith's practice of permitting others to ride the horses and that Smith had apparent authority to do so. For that reason, we conclude that the grant of summary judgment on the ground that the plaintiff had failed to establish apparent authority on the part of Smith as a matter of law was improper.

■ We turn now to the defendant's claim that the evidence establishes as a matter of law that the plaintiff was a trespasser and that, therefore, the plaintiff could recover only if he pleaded and established willful and wanton conduct on the part of the Center. (The plaintiff has not pleaded willful and wanton conduct.) We have concluded that whether Smith had apparent authority to permit the plaintiff to ride the horse presented a question of fact. That conclusion necessarily leads to our further conclusion that a fact question also exists over the status of the plaintiff. If a fact finder found that Smith did have such apparent authority, it would necessarily follow that the plaintiff was not a trespasser. For that reason, summary judgment based on the Center's claim that the record established that the plaintiff was a trespasser as a matter of law was also improper.

■ The defendant's last argument is that the Recreational Use of Land and Water Areas Act (the Act) (Ill. Rev. Stat. 1985, ch. 70, pars. 31 through 37) shielded it from liability for the plaintiff's injuries. The purpose of the Act, which was first passed in 1961, is to encourage land owners to permit persons to enter their land for recreational purposes without fear of incurring liability for injuries to those persons who did use the land for recreational purposes. (Ill. Rev. Stat. 1985, ch. 70, par. 31.) Section 3 provides that, subject to two exceptions, "an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Ill. Rev. Stat. 1985, ch. 70, par. 33.

The exceptions to section 3 are contained in section 6 of the Act (Ill. Rev. Stat. 1985, ch. 70, par. 36):

> "Nothing in this Act limits in any way any liability which otherwise exists:

(a) For willful and wanton failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease is not a charge within the meaning of this section."

The Act has been interpreted by State and Federal courts but with a lack of unanimity of opinion. The first case to construe the Act was *Miller v. United States* (N.D. Ill. 1976), 442 F. Supp. 555, *aff'd* (7th Cir. 1979), 597 F.2d 614. In *Miller*, the plaintiff was injured when he dove into shallow water in a lake owned by the United States. The government pleaded the Act as an affirmative defense. After a trial, the district judge concluded that the evidence failed to establish the affirmative defense. In doing so, the court referred to the Recreational Area Licensing Act (Licensing Act). (Ill. Rev. Stat. 1971, ch. 111½, pars. 761 through 785.) The district judge said the following:

"The entire legislative scheme should be read in *pari materia*. When it is, it becomes clear that the Recreational Use of Land and Water Areas Act is intended for those who permit open lands to be used recreationally on a casual basis. But those who hold their property out to the public for recreational purposes, and maintain their property for recreational use by the number of persons that are prerequisite to the application of the Recreational Area Licensing Act, they are subject to the provisions of the latter and not entitled to asserted protection of the former." (*Miller*, 442 F. Supp at 561.)

The Court of Appeals agreed with the district judge. *Miller*, 597 F.2d at 616.

It is appropriate at this point to discuss the Licensing Act, which was first passed 10 years after the Recreational Use of Land and Water Areas Act and provided that all recreational areas be licensed. A "recreational area" was defined as follows:

"(a) 'Recreational Area' is any area of land where 1 or more tents, cabins, recreational vehicles or other permanent or non-permanent type shelters are erected and maintained for 10 or more persons for 7 or more consecutive days or 10 or more days during a calendar year for recreational activities, or camping; or where space for 10 or more persons for 7 or more consecutive days or 10 or more days during a calendar year for

recreational activities, camping or temporary parking of recreational vehicles is furnished either free of charge or for revenue purposes, for the placing of such tents, cabins, recreational vehicles or other permanent or non-permanent type shelters; or where space for recreational activities or camping is permitted for 10 or more persons for 7 or more consecutive days or 10 or more days during a calendar year either free of charge or for revenue purposes without shelters of any kind, and it shall include any structure, tent, vehicle, enclosures, recreational vehicle facility or equipment related or used or intended for use as a part of such recreational area." Ill. Rev. Stat. 1971, ch. 111½, par. 762(a).

The Licensing Act was amended in 1985. At the time of this occurrence, the Licensing Act, then and now called the Campground Licensing and Recreational Area Act, provided for the licensing only of a "campground" but provided that all "recreational areas" must comply with the rules of the Department of Public Health. (Ill. Rev. Stat. 1985, ch. 111½, par. 764.) Section 2 of the 1985 Act contained the following definitions:

"(a) 'Recreational Area' is any area of land which is designed, constructed, operated or maintained either free of charge or for revenue purposes for recreational activities.

(b) 'Recreational Activities' include, but are not limited to hunting, fishing, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, festivals, public gatherings and visiting historical, archeological, scenic or scientific sites, or for any purpose, including but not limited to educational, vocational and religious activities and assemblies." Ill. Rev. Stat. 1985, ch. 111½, par. 762.

The first Illinois State court to consider the Recreational Use Act was *Johnson v. Stryker Corp.* (1979), 70 Ill. App. 3d 717, 388 N.E.2d 932, in which the plaintiff sued a landowner for the death of her child, who was injured when diving into a pond owned by the defendant. The defendant pleaded the Recreational Use Act as an affirmative defense, which was stricken by the trial judge. The basis of the judge's ruling was that the property was not open to the public. Testimony showed that some school children could and did use the pond, after being given permission by the property owner. Signs were posted, one reading, "Swim at Your Own Risk—We Are Not Responsible" and another reading, "Private Property—No Swimming on Holidays—Do Not Litter—Pick Up Your Own Trash."

The First District Appellate Court agreed with *Miller v. United States* that the Recreational Use Act is applicable to those who permit their lands to be used recreationally on a casual basis but did not agree with *Miller* that the Act did not apply unless the property owner made his land available to the general public for recreational purposes. 70 Ill. App. 3d at 721.

In *Davis v. United States* (7th Cir. 1983), 716 F.2d 418, the Court of Appeals interpreted *Stryker* to be an *obiter dictum* holding that a landowner subject to the Licensing Act might still be entitled to the immunity of the Recreational Use Act. The *Davis* court disagreed with *Stryker* and adhered to *Miller*.

In *Logan v. Old Enterprise Farms, Ltd.* (1989), 188 Ill. App. 3d 920, 544 N.E.2d 988, the plaintiff sued a church and the owner of land when the plaintiff was injured at a church picnic. The trial judge granted summary judgment to the owner of land and denied summary judgment to the church. The judge held that the landowner was protected by the Recreational Use Act but that the church was not. The Fourth District Appellate Court held that both should be protected or neither should be protected. It held further that the record established that neither should be protected. 188 Ill. App. 3d at 931.

The court discussed *Miller* and *Stryker* and declined to follow *Stryker*:

"Defendants argue that in *Johnson v. Stryker Corp.* [citation], the appellate court refused to follow the restrictive holding of *Miller v. United States* [citation], and instead held that defendants would be allowed the protection of the Act even if the land was used primarily for recreational purposes. While we decline to follow the first district's ruling in *Stryker*, we believe that [the church] has misinterpreted the *Stryker* decision. We find *Stryker* to mean that the Act will only be applicable to a landowner who permits his land to be used recreationally on a *casual* basis, but will allow a landowner protection even though he did not open up his lands to *all* members of the public." (Emphasis in original.) 188 Ill. App. 3d at 934.

In holding that, as a matter of law, neither defendant was entitled to the protection of the Recreational Use Act, the court relied on the testimony that the school house lot was "used primarily, if not exclusively, for recreational activities." (188 Ill. App. 3d at 933.) The court remanded the case for a hearing to determine whether the Licensing Act was applicable.

The supreme court reversed the appellate court on the ground that the plaintiff failed to establish a breach of duty by the defend-

ants. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 564 N.E.2d 778.) Because of its reversal on that ground, the supreme court held that the applicability of the Recreational Use Act was moot. 139 Ill. 2d at 241.

We do not accept the interpretation of *Stryker* made by the Seventh Circuit Court of Appeals or by the Fourth District Appellate Court. We do not read *Stryker* to mean, as apparently the Court of Appeals did in *Davis*, that a property owner subject to the Licensing Act may also be entitled to the protection of the Recreational Use Act. In *Stryker* the property owner admittedly was not subject to the Licensing Act. Nor do we agree with the *Logan* court's observation that *Stryker* held that the defendant would be allowed the protection of the Recreational Use Act even if the land was used primarily for recreational purposes. (188 Ill. App. 3d at 934.) The *Stryker* court had before it a certified question: May a landlord who does not make his land available to the general public for recreational purposes be protected by the Recreational Use Act? The *Stryker* court simply held that a property owner's restriction of his property to less than the general public does not *ipso facto* remove his property from the protection of the Recreational Use Act. We agree with the holding of *Stryker*.

There are other factual situations similar to that in *Stryker* which illustrate the wisdom of its holding. In addition to farmlands open to hunters for specific periods, as mentioned in *Stryker*, we can think of property owners who permit cross-country skiing or snowmobiling or hiking or sledding. Surely the law would not remove the immunity of the Recreational Use Act simply because the owner of the property sought to restrict the number of people who could use his land for those purposes. Generosity should not be penalized because some might conclude that the property owner was not generous enough.

We do not understand the fourth district's action in *Logan* in which it held that the property was not subject to the protection of the Recreational Use Act, but, nonetheless, remanded the cause for a hearing to determine whether the Licensing Act was applicable. The Licensing Act does not create a cause of action; the Licensing Act may be pertinent only in determining whether or not the Recreational Use Act immunity is available. Because the Fourth District Appellate Court ruled that the evidence established, as a matter of law, that the Recreational Use Act was not applicable, in our judgment, the applicability of the Licensing Act was moot.

We point out that the accidents involved in *Miller, Stryker, Davis* and *Logan* all occurred before the Licensing Act was amended in

1985. Of particular significance is the change in the definition of "Recreational Area." We make this observation because of the defendant's argument that it does not meet the definition of "Recreation Area." It does not meet the definition of "Recreation Area" under the 1971 Act, which the defendant cites to us, but it does meet the definition of "Recreation Area" under the 1985 Act, which was in effect at the time of this occurrence. And the activities of the defendant also meet the definition of "Recreational Activities" under the 1985 Act.

The defendant also argues that the Center did not use the property "exclusively for recreational purposes." We know of no case that has required exclusive recreational use before a property owner may be barred from the immunity of the Recreational Use Act.

■ It is appropriate to identify the issue as it has been presented to us. This case was decided on summary judgment. We have not been asked to determine, and we do not determine, whether the immunity available under the Recreational Use Act presents a question of law or fact. And if it presents a question of fact, we make no attempt to set forth the appropriate standard or jury instruction. We point out that the district court in *Miller* made a factual determination and in doing so said that the Recreational Use Act was not "intended for those who permit open lands to be used recreationally on a casual basis." (*Miller*, 442 F. Supp. at 561.) The plaintiff contends that the evidence established that the recreational use of the land was more than "casual"; the defendant maintains that it was not. For the purposes of this opinion, therefore, we will accept the issue as it has been couched by the parties: whether the Center has established, as a matter of law, that its use of the land for recreational purposes was only "casual." We conclude that the defendant has not established such a use. Indeed, we judge that the evidence establishes the opposite conclusion: As a matter of law the defendant's use for recreational purposes was more than "casual." Seventy-five percent of the defendant's income was earned. There were approximately 20 permanent structures in use on the premises; approximately 12 horses were kept for use for summer camps on the premises; in the summer of 1986, there was a preenrollment charge made for individuals participating in the summer camps during which the horses were used; there was a gate which closed the premises off from the general public; there was a sign on the premises indicating that it was open by reservation only; and the summer camps would operate on Sundays. These facts establish a more than "casual" recreational use of the property. For

that reason we hold that the defendant may not invoke the immunity of the Recreational Use Act.

The plaintiff also argues that the Recreational Use Act is not applicable here for the additional reason that the Center charged a fee to its users. As noted, section 6(b) of the Act provides that the Act does not apply "[f]or injury suffered in any case where the owner of land charges the person or persons who go on the land for the recreational use thereof." (Ill. Rev. Stat. 1985, ch. 70, par. 36(b).) The defendant maintains that the exception is not applicable because the plaintiff himself was not charged a fee. There is precedent for the defendant's position. In *Garfield v. United States* (W.D. Wis. 1969), 297 F. Supp. 891, two husbands and their wives entered a military reservation; the husbands paid 50 cents each for a small game hunting permit. Their wives paid no fee. The district court held that the husbands, who had paid a fee, were covered by the Wisconsin statute similar to the Illinois Recreational Use Act but that their wives, who had not paid a fee, were not. *Garfield* was followed in *Stephens v. United States* (C.D. Ill. 1979), 472 F. Supp. 998.

We do not agree with the holdings of *Garfield* or *Stephens*. To illustrate, those operating a recreational area, who charge a general admittance fee, could grant free admission to senior citizens or small children. Under *Garfield* and *Stephens* a property owner would not be immune from claims for general negligence brought by anyone who paid a fee, but would be immune for claims brought by injured senior citizens or injured children who did not pay a fee. Although the *Stephens* court followed *Garfield* it did make this observation:

> "There does not appear to be any specific legislative purpose or public policy in distinguishing between paying and non-paying recreational users of a single land or water area. There does appear to be a clear purpose to distinguish between land and water areas which 'charge' and those which do not." (*Stephens*, 472 F. Supp. at 1011.)

We do not believe there is any legislative purpose or public policy to be served by making a distinction between paying and nonpaying users of the defendant's property. For this additional reason, we judge that the defendant may not invoke the protection of the Recreational Use Act.

Although the plaintiff has not specifically argued that the Recreational Use Act is not applicable to the facts of this case, we wish to express our own reservations of the Act's applicability here. The allegations of duty, breach and proximate cause all concern a defective

"cinch strap." The statute, on the other hand, deals with premises liability. The statute provides:

> "[A]n owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational purposes, or give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." (Ill. Rev. Stat. 1985, ch. 70, par. 33.)

While horseback riding is an activity, the defendant's negligence is based upon its failure, after notice, to replace or repair the defective "cinch strap."

For all these reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

McNAMARA and RAKOWSKI, JJ., concur.