GARY E. JACOBSON, Plaintiff-Appellant, v. PAUL WASZAK *et al.*, Defendants-Appellees.

Second District No. 2—96—1326

Opinion filed November 19, 1997.

C. Jeffrey Thut, of Roach, Johnston & Thut, of Libertyville, for appellant.

Michael R. LaBarge, of LaBarge, Campbell & Lyon, L.L.C., of Chicago, for appellee Paul Waszak.

John P. Christensen, of Fuqua, Winter & Stiles, Ltd., of Waukegan, for appellee Wasz's Playtime Resort, Inc.

JUSTICE THOMAS delivered the opinion of the court:

In this negligence case, plaintiff, Gary E. Jacobson, appeals from the circuit court's order granting summary judgment to defendants, Paul Waszak and Wasz's Playtime Resort, Inc. (Playtime). The trial court concluded as a matter of law that defendants were immunized from suit by section 5—1(I) of the Snowmobile Registration and Safety Act (Snowmobile Act) (625 ILCS 40/5—1(I) (West 1992)) and section 4 of the Recreational Use of Land and Water Areas Act (Recreational Use Act) (745 ILCS 65/4 (West 1992)). We affirm.

Plaintiff filed a complaint against defendants alleging that, on or about February 6, 1993, Waszak, individually and as agent and employee of Playtime, was negligent in creating a snowmobile racing track by plowing snow from the frozen surface of Channel Lake near Antioch, Illinois, and in marking the lanes by the placement of cones. Plaintiff alleged that, as a result of defendants' breach of duty of ordinary care by their acts and omissions, plaintiff was injured when he was thrown from his snowmobile upon striking a frozen mound of snow at the end of one lane at a "great" speed.

On appeal, plaintiff argues that the trial court erred in determining that the immunities applied to defendants because the immunity statutes do not apply where permission to utilize the property is given in exchange for a fee and defendants would charge a membership and entry fee prior to participating in the snowmobile drag race held there. Plaintiff concedes that he did not actually pay a fee but nevertheless contends that, where defendants generally charge a fee, the immunities are inapplicable. Plaintiff relies on certain statements regarding the Recreational Use Act made in *Phillips v. Community Center Foundation & the Children's Farm*, 238 Ill. App. 3d 505 (1st Dist. 1992). The *Phillips* court appears to have determined, among other things, that the defendant could not invoke the immunity against a nonpaying recreational user of the land despite the clear language of that act. That act exempted the owner of land, who did not charge recreational users of the land, from any "duty of care to keep the premises safe for entry or use by any person for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises" unless the owner's "failure to guard or warn against a dangerous condition, use, structure or activity" was "willful and wanton." Ill. Rev. Stat. 1985, ch. 70, pars. 33, 36.

We hold as a matter of law that the Snowmobile Act provides

defendants with immunity from a negligence suit based on the undisputed factual circumstances presented by the parties and that summary judgment was correctly entered for defendants. The depositions, pleadings, and affidavits show that, during the winter of 1992-93, the Antioch Snowmobile Drag Racing Association (Association) sponsored snowmobile races on the frozen surface of Channel Lake, adjacent to Playtime. Association members paid either a seasonal or a daily membership fee (the most recent daily fee being $5). There was also an entry fee of $20 to $25 to be paid to participate in a race on a given day. The fee had to be paid to use the track area during organized races. A person who did not pay in the morning when there was no race could still use that area of the lake. The Association had spectators' liability but not general liability insurance. The drivers held a meeting before each race.

According to his deposition, Waszak volunteered his time to plow the racetrack when it snowed. He had plowed the track area sometime prior to February 6, 1993, the date of the accident. There were cones placed on the snowbanks on each side of the plowed area, but no drag race lanes were laid out that day with a start line and a finish line. The Association also owned a scoring building paid for with funds from the membership fees; the public address system's external speakers were not mounted. There were no organized drag races that day, because they were cancelled by 11 a.m. for lack of registered participants. Registration was from 9 a.m. to 11 a.m., and the races were ordinarily held at noon. The track was not set up that day. However, there were snowmobiles going up and down the plowed area. Waszak opined that, judging from where plaintiff landed and was injured, he was too close to the snowbank and was in the safety zone, an area to the side of the track that is kept free of spectators and racers.

The dragstrip was 660 feet long by 120 feet wide and had 4 lanes. A cone would be placed about every 100 feet. When the course was set up for a race, at the end of the 660-foot track, there would be two metal signs set into the ice that marked the finish line. At the starting line there would be a "Christmas tree" device belonging to the Association; the tree had lights that were triggered to signal the start of the race. The metal signs were not in place on February 6. Races were held on February 7, and the Association charged membership and entry fees on that date. The entry fees were used for the purse money. The races required a permit from the Lake County building and zoning department. The permit was obtained at the beginning of the season, and the Association paid the $25 permit fee for each race.

In his partial deposition included in this record, plaintiff testified that, just before the accident, he was making a second practice run down the track and was going 85 to 90 miles per hour at the finish line. He was in the middle of a lane and saw about 20 feet ahead of him a pile of frozen snow about 5 inches high that looked like a volleyball with half of the air out of it. He stated that the length of the course was 660 feet and that there was also another 600- to 700-foot shutdown (slowdown) area. It was a straight course. Plaintiff's affidavit states in part that he was injured in a practice run on February 6, 1993, and had not paid the entry fee for the snowmobile races. The accident report showed that the accident occurred at about 2:30 p.m. on that date.

The gist of plaintiff's argument is that the immunities provided by the Snowmobile Act and the Recreational Use Act do not apply to defendants because participants would have had to pay a fee had the race not been cancelled. Despite plaintiff's failure to pay the fee, he nevertheless claims that the immunities still do not apply where defendants generally charge a fee to users. This argument presumes that the defendants are occupants of the premises for the purposes of the immunities in question because they used or exercised a sufficient degree of control over the premises in preparing the area and in requiring fees for its use. Plaintiff does not dispute this occupant classification but instead appears to rely on defendants' relationship as occupiers of the premises in arguing that the immunities do not apply.

■ The plain language of section 5—1(I) of the Snowmobile Act (625 ILCS 40/5—1(I) (West 1992)), which is specifically directed at snowmobiling activities, shields defendants from a negligence suit by this plaintiff. That section provides:

"Notwithstanding any other law to the contrary, an owner, lessee, or occupant of premises owes no duty of care to keep the premises safe for entry or use by others for snowmobiling, or to give warning of any condition, use, structure, or activity on such premises. This subsection does not apply where permission to snowmobile is given for a valuable consideration other than to this State, any political subdivision or municipality thereof ***. *** Nothing in this section limits in any way liability which otherwise exists for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." 625 ILCS 40/5—1(I) (West 1992).

In upholding the constitutionality of an earlier, identical version of this provision, our supreme court cited with favor the principle that, under its police power, which extends to matters in the interest

of the public welfare or convenience, the State may impose by statute a different duty or degree of care towards others, and the court noted that the distinction between the duty imposed in the case of the gratuitous performance of services and the performance of them for hire is found running through many fields of law. *Ostergren v. Forest Preserve District*, 104 Ill. 2d 128, 133 (1984). The court upheld the legislature's different standard of care for tort liability in snowmobile accidents due to the inherent danger of snowmobile operation on private and public property. *Ostergren*, 104 Ill. 2d at 133. The court pointed out that the statute restricts the liability of landowners who would otherwise have to undertake massive repairs to make the property safe for snowmobiling and that forest preserves and parks would otherwise have to be devoid of various common objects and equipment that could upset a speeding snowmobile. *Ostergren*, 104 Ill. 2d at 134.

We believe the legislature may properly allocate tort liability based on its determination that some parties are more capable than others of assuming the financial risks involved in providing premises for recreational purposes—such as those who profit directly from the recreational use of the premises or have financial incentives to improve the property for that purpose. The payment of a fee to engage in snowmobiling changes the legal relationship of the parties in connection with the premises. See *Moon v. Smith*, 276 Ill. App. 3d 958, 963 (1995); *Garfield v. United States*, 297 F. Supp. 891, 899 (W.D. Wis. 1969) (discussing common-law classifications of those entering premises).

In this case, the legislature has properly determined that the gratuitous use of the premises for the inherently dangerous sport of snowmobiling should not expose an owner, lessor, or occupant to expansive liability. The dangers of snowmobiling are common knowledge. We do not concur with the *Phillips* court's reservations concerning the wisdom of the legislature in this regard, where the court stated: "We do not believe there is any legislative purpose or public policy to be served by making a distinction between paying and nonpaying users of the defendant's property." *Phillips*, 238 Ill. App. 3d at 517. We decline to follow *Phillips* on this point.

Section 5—1(I) of the Snowmobile Act clearly excuses the landowner's or the occupants's duty to remove artificially created conditions such as ice and snow from the property and eliminates the duty to warn snowmobilers about anything on the land—subject of course to the stated exceptions. See *Moon*, 276 Ill. App. 3d at 963. Plaintiff did not pay any fee to use the property that defendants had prepared for snowmobiling. As the use of the area was gratuitous,

156

the clear language of the statute immunizes defendants from an action sounding in negligence. *Moon,* 276 Ill. App. 3d at 965, 970; see *Garfield,* 297 F. Supp. at 902 (under analogous Wisconsin recreational use statute, defendant was not liable for injury to plaintiff who had entered military reservation without paying valuable consideration).

The parties have presented no genuine issues of triable fact, and we conclude that defendants were entitled to judgment as a matter of law. See *Purtill v. Hess,* 111 Ill. 2d 229, 240 (1986). We see no basis to create judicially an exception to the snowmobiling immunity provision for situations where a plaintiff *might have* paid, but did not, valuable consideration. See *Moon,* 276 Ill. App. 3d at 970. As this statutory immunity, granted specifically with respect to snowmobiling, was sufficient in itself to bar the plaintiff's suit against defendants, we need not decide whether defendants were also shielded under the broader provisions of the Recreational Use Act.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER, P.J., and RATHJE, J., concur.