JAMES JASPER, Plaintiff-Appellant, v. CHICAGO NATIONAL LEAGUE BALL CLUB, INC., Defendant-Appellee (Earl Santee *et al.*, Defendants).

First District (3rd Division)  Nos. 1—97—3360, 1—97—3632, 1—97—4221 cons.

Opinion filed December 8, 1999, *nunc pro tunc* August 25, 1999.

Clausen Miller P.C., of Chicago (James T. Ferrini, Stephen J. Schlegel, Phillip J. Healey, and Imelda Terrazino, of counsel), for appellant.

Daniel F. Gallagher and David L. LaPorte, both of Querrey & Harrow, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiff James Jasper sued the owner of Wrigley Field, Chicago National League Ball Club (the Cubs), after he was struck by a foul ball during a Chicago Cubs baseball game. In a four-count complaint, plaintiff alleged that before 1992 a net hung between the upper deck and a backstop behind home plate at Wrigley Field. In 1992, the Cubs removed the net when it built "skyboxes" behind home plate just below the upper deck.

Count I of plaintiff's complaint alleged that the Cubs assumed a duty to protect patrons from foul balls by installing the original netting and that this duty was breached when the Cubs willfully and wantonly, or negligently, removed the netting, failed to warn patrons of the increased risk, failed to offer safer seating, and allowed the sale of food and beverages in an area where vendors would distract patrons from approaching foul balls. Counts II and III alleged that the same omissions amounted to negligence and willful and wanton conduct. Count IV sought a declaration that the Baseball Facility Liability Act (745 ILCS 38/1 *et seq.* (West 1996)) (the Baseball Act or Act) is unconstitutional special legislation and denies plaintiff equal protection under the Illinois and United States Constitutions.

The Cubs moved to dismiss count IV. The trial court granted the motion. The court also granted the Cubs' subsequent motion to dismiss count III and other parts of the complaint to the extent that they alleged negligence rather than willful and wanton conduct.

Plaintiff argues on appeal that the Baseball Act is unconstitutional special legislation (see Ill. Const. 1970, art. IV, § 13) and violates the equal protection guarantees of the Illinois and United States Constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV).

■ The Baseball Act provides:

> "The owner or operator of a baseball facility shall not be liable for any injury to the person or property of any person as a result of that person being hit by a ball or bat unless: (1) the person is situated behind a screen, backstop, or similar device at a baseball facility and the screen, backstop, or similar device is defective (in a manner other than in width or height) because of the negligence of the owner or operator of the baseball facility; or (2) the injury is caused by willful and wanton conduct, in connection with the game of baseball, of the owner or operator or any baseball player, coach or manager employed by the owner or operator." 745 ILCS 38/10 (West 1996).

■ The Illinois Constitution prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or class to the exclusion of others similarly situated. Ill. Const. 1970, art. IV, § 13; see also *County of Bureau v. Thompson*, 139 Ill. 2d 323, 336, 564 N.E.2d 1170 (1990). The proscription against special legislation does not prohibit all classifications. It prohibits arbitrary classifications. See *In re Petition of Village of Vernon Hills*, 168 Ill. 2d 117, 122, 658 N.E.2d 365 (1995). "If any set of facts can be reasonably conceived that justifies distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the

purpose of legislative regulation or control \*\*\*." *Village of Vernon Hills*, 168 Ill. 2d at 122. Classifications are presumed to be constitutional, and the party attacking the statute bears the burden of establishing that the classification is arbitrary. *Village of Vernon Hills*, 168 Ill. 2d at 122-23.

██ The equal protection clauses of the United States and Illinois Constitutions protect a person or class from arbitrary discrimination: the state's withholding of some benefit or privilege enjoyed by all others. See *County of Bureau*, 139 Ill. 2d at 335. A special legislation challenge is " 'generally judged by the same standard' " as an equal protection challenge. See *Nevitt v. Langfelder*, 157 Ill. 2d 116, 125-26, 623 N.E.2d 281 (1993), quoting *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 368, 483 N.E.2d 1245 (1985). If the Act does not implicate a fundamental right or involve a suspect classification, we apply the rational basis test. See *Village of Vernon Hills*, 168 Ill. 2d at 123. Under this test, we must decide whether the statutory classification is rationally related to a legitimate state interest. *Village of Vernon Hills*, 168 Ill. 2d at 123.

██ Plaintiff maintains that "[n]o legitimate state interest is reasonably served by providing \*\*\* special tort protection to owners who host baseball games solely to make a profit."

The Baseball Act encourages baseball team owners to build and maintain parks for the sport of baseball by shifting the expense of injury caused by foul balls to spectators unless the injury is caused by the owner's willful and wanton conduct. The Baseball Act encourages use of parks for a recreational activity in a way that is not arbitrary, capricious, or unreasonable. See *Maloney v. Elmhurst Park District*, 47 Ill. 2d 367, 370, 265 N.E.2d 654 (1970) (approving of limiting liability as a way to encourage the development and maintenance of parks for recreational purposes).

Plaintiff suggests that the Baseball Act was a legislative response to *Coronel v. Chicago White Sox, Ltd.*, 230 Ill. App. 3d 734, 595 N.E.2d 45 (1992), and *Yates v. Chicago National League Ball Club, Inc.*, 230 Ill. App. 3d 472, 595 N.E.2d 570 (1992). Both cases held that owners and operators of major league baseball parks owed a duty of reasonable care to protect spectators from injury caused by foul balls, including a duty to construct adequate screening and to warn of the danger. The Baseball Act took effect within six months after *Coronel* and *Yates* were decided. Plaintiff does not argue that the Baseball Act applies only to the White Sox and Cubs, who were the defendants in those cases. Nothing in the equal protection or special legislation clauses prohibits the General Assembly from enacting legislation in response to judicial decisions. That is one of the things legislatures do. Our

analysis of a statute does not include speculation about the timing of an enactment.

Plaintiff argues that the Act singles out baseball for special treatment by forcing a plaintiff to establish a greater degree of fault while other sports venue owners remain liable for ordinary negligence. Plaintiff notes that, except for hockey (see 745 ILCS 52/1 *et seq.* (West 1996)), baseball is the only sport the legislature has afforded "almost complete immunity from negligence for injuries to spectators from objects used in the sport, while at the same time imposing no responsibility on [ballpark owners] for the safety of their paying customers." Plaintiff contends that there is nothing so unique about baseball that its spectators should be treated differently than spectators of other sports.

We believe the sport of baseball does have unique characteristics that would reasonably prompt a legislature to enact limited liability legislation. The inherent danger of a sport may be reason enough to prompt the legislature to enact a limited liability statute. See *Ostergren v. Forest Preserve District*, 104 Ill. 2d 128, 133 (1984) (inherent danger of snowmobiling justified legislation limiting property owners' liability to snowmobilers).

Foul balls travelling at high speeds are common at baseball games. The speed and frequency of foul balls distinguish baseball from most other spectator sports. In this respect, basketball and football spectators, for example, are not similarly situated. Plaintiff notes that errant balls are also a danger to golf spectators, but owners of golf courses are not treated similarly to owners of baseball parks. See *Duffy v. Midlothian Country Club*, 92 Ill. App. 3d 193, 415 N.E.2d 1099 (1980). Plaintiff, who has the burden of proof, cites nothing to show that spectator injuries during golf games occur with the same frequency as they occur at baseball games. Even if such evidence were available, the Baseball Act, to survive scrutiny, need not apply to all sports that may present similar dangers. "The legislature need not choose between legislating against all evils of the same kind or not legislating at all. Instead it may choose to address itself to what it perceives to be the most acute need." See *Chicago National League Ball Club*, 108 Ill. 2d at 367.

Plaintiff next argues that the Act protects only baseball parks that make a profit, such as the Chicago White Sox and the Chicago Cubs. Plaintiff concedes that the language of the Act applies to all owners and operators of baseball parks, whether operated for profit or not. But plaintiff argues that because other baseball park owners already enjoy limited liability under other statutes, the Act only benefits for-profit parks. Plaintiff points out that baseball parks maintained by lo-

cal governments are already protected under the Local Governmental and Governmental Employees Tort Immunity Act (see 745 ILCS 10/3—106 (West 1996)). "[G]ratuitous private providers" of baseball facilities for recreational use free of charge are protected under the Illinois Recreational Use of Land and Water Areas Act (Recreational Use Act) (see 745 ILCS 65/4 (West 1996)).

We do not find it relevant that some baseball parks enjoy limited liability under more than one statute. "[T]he validity of one statutory classification is not properly tested by reference to another." *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 40, 649 N.E.2d 384 (1995). The Baseball Act, itself, does not carve out a class of profit-making parks for a special benefit, but applies the same limited liability to all of them. Even if the Act applied only to parks that make a profit from baseball, plaintiff cites nothing to support the argument that encouraging a popular recreational activity ceases to be a legitimate state interest when the provider is making a profit.

Affirmed.

CERDA and McBRIDE, JJ., concur.