NOTICE

Decision filed 07/08/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-09-0213

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

DEBBIE J. VAUGHN,                                    ) Appeal from the
                                                     ) Circuit Court of
    Plaintiff-Appellant and                          ) Franklin County.
    Cross-Appellee,                                  )
                                                     )
v.                                                   ) No. 06-L-29
                                                     )
JARROD BARTON and WEST FRANKFORT )
RECREATION ASSOCIATION,                              )
                                                     ) Honorable
    Defendants-Appellees and                         ) Leo T. Desmond,
    Cross-Appellants.                                ) Judge, presiding.

_____

JUSTICE WEXSTTEN delivered the opinion of the court:

The plaintiff, Debbie Vaughn, filed a complaint in the circuit court of Franklin County against the West Frankfort Recreation Association (the Recreation Association) and its alleged agent, Jarrod Barton, alleging that she was injured while watching her minor son's organized baseball game when she was hit by a baseball thrown by an 11-year-old player warming up for the next game. After the evidence was presented, the circuit court found the immunity of the Recreational Use of Land and Water Areas Act (the Recreational Use Act) (745 ILCS 65/1 *et seq.* (West 2002)) applicable and granted a directed verdict in favor of the defendants. For the reasons expressed below, we affirm.

BACKGROUND

The Recreation Association is a not-for-profit Illinois corporation that organizes approximately 12 summer baseball leagues broken down by age group for approximately 550 to 650 youth. The Recreation Association is composed of an executive committee, a board of directors, league coordinators for each respective league age group, coaches and their

1

assistants, and the players. The coordinators for each league select the coaches, set rules for the baseball games, and "basically run their league," doing everything from organizing the teams to maintaining the baseball fields. The coaches, on the other hand, draft their team members and have general supervisory authority over their teams. The executive committee, board of directors, coordinators, and coaches are all unpaid volunteers.

In 1997, the Recreation Association entered into an agreement with the Frankfort Community Park District (the Park District) to "formally acquire the sole and exclusive lease to maintain, possess, control[,] and use all of the ten (10) ball diamonds in the Park District *** in an area generally known as the West Frankfort Park." Under the terms of that agreement, the Recreation Association agreed to pay the Park District $100 per year as rent. The Recreation Association also agreed "to pay all costs of electricity needed and used in the conduct of the affairs of the Recreation Association and to hold and maintain the property subject to this lease for recreational purposes as herein stated." The parties also agreed, "That there be no admission charge as such to spectators who desire to see games played during non[]tournament play, provided, however, that voluntary contributions from patrons to help defray expenses will be permissible and acceptable and there can be an admission charge to spectators for tournament play."

The testimony at the trial established that the Recreation Association built fences, dugouts, and scorers' booths, installed lights and light poles around the 10 baseball fields in West Frankfort Park, and maintained those fields over the years. The Recreation Association also provided shirts and equipment for the players. The money to pay for these expenses came from the $35 sign-up fee the players paid, candy bar sales, barbeque, and concessions. The Recreation Association does not charge an admission for people to come and watch the games.

On May 20, 2005, the plaintiff attended her son's baseball game at one of the ball

fields in West Frankfort Park. The plaintiff testified that she was sitting in the bleachers watching the game, "looking straight ahead, and a ball came from the side[] and hit [her] in the eye." She testified that she did not see the ball coming and prior to being hit was not aware that anyone was throwing a ball close to her. She testified that she was not charged an admission to the game and that it was free to the public to come and watch the games. It is undisputed that the plaintiff suffered damages as a result of this accident.

Cody Barton, Jarrod's 11-year-old son, testified that he and one of his teammates were warming up for the next game, playing catch. He testified that they were playing catch behind the dugout, in between the two sets of bleachers, when he threw the ball that hit off the top of his teammate's glove and hit the plaintiff.

Jarrod testified he was a coach for his son Cody's team and that they had arrived at the ball field about 15 to 20 minutes before the accident occurred. He testified that upon arriving he went to the fence along the third-base line and was watching the game and having a conversation with the plaintiff's husband, Keith Vaughn, who happened to be the assistant coach and league coordinator for Cody and the plaintiff's son's league. He testified that he did not see the accident and did not know Cody was playing catch. He testified that he had not yet called his team together and that he was a spectator at the game at the time of the accident. He testified that Cody paid a $35 sign-up fee to play in the league and that he was paid nothing for coaching.

Keith testified that when the plaintiff was injured, Jarrod was not coaching. He stated as follows: "He was a spectator. He was a coach, waiting on his team to get there." He testified that until a coach gives his players some direction, the coach is just a coach waiting on his team to show up.

It is undisputed that warming up in the area between the bleachers was not a safe or proper area for players to warm up and that there were no signs posted by the Recreation

3

Association informing players not to warm up in the area around the bleachers and dugouts.

At the close of the plaintiff's case, Jarrod moved for a directed verdict on count III (negligence) based upon the insufficiency of the evidence when measured against the Sports Volunteer Immunity Act (the Sports Volunteer Act) (745 ILCS 80/0.01 *et seq.* (West 2002)). The court denied that motion. Jarrod also moved for a directed verdict on count IV (willful and wanton conduct) based upon insufficient proof of willful and wanton conduct. This motion was granted and has not been appealed. The Recreation Association moved for a directed verdict on count IV based upon insufficient proof that Jarrod was acting in the scope of his alleged agency at the time of the occurrence, on count VII based upon insufficient proof of negligence, and on counts VI and VIII based upon insufficient proof of willful and wanton conduct. The court granted the motion on counts VI and VIII (willful and wanton conduct) but denied the motion on counts IV (agency) and VII (negligence). Counts VI and VIII have not been appealed.

At that time, the defendants were allowed to present evidence. Jarrod did not present any evidence. The Recreation Association presented the testimony of the president of the Recreation Association. At the close of all the evidence, Jarrod and the Recreation Association reasserted their motions for a directed verdict on the remaining counts–count III (negligence) against Jarrod and counts IV (agency) and VII (negligence) against the Recreation Association. Again, the court denied Jarrod's motion for a directed verdict based upon the insufficiency of the evidence when measured against the Sports Volunteer Act. The court also denied the Recreation Association's motion based on the Baseball Facility Liability Act (the Baseball Facility Act) (745 ILCS 38/1 *et seq.* (West 2002)), reasoning that because the ball was not thrown from the baseball field, the Baseball Facility Act could not apply. The Recreation Association then renewed its motion for a directed verdict on counts V and VII, this time on the basis of the immunities afforded under the Recreational Use Act. The

4

court granted that motion. Jarrod then renewed his motion for a directed verdict, this time based upon the Recreational Use Act. The court granted a directed verdict in Jarrod's favor. The plaintiff appeals, and the defendants cross-appeal.

## ANALYSIS

On appeal, the plaintiff contends that the fee paid by Cody was sufficient to remove the immunity of the Recreational Use Act. Alternatively, the plaintiff argues that, if the Recreational Use Act applies, it does not apply to all the allegations of negligence. On cross-appeal, the Recreation Association contends that the immunity provided by the Baseball Facility Act applies to it. Jarrod cross-appeals the circuit court's denial of his motion for a directed verdict in his favor pursuant to the provisions of the Sports Volunteer Act. We affirm.

"The standard of review for a directed verdict is whether all evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could stand." *Palen v. Strader's Logging*, 243 Ill. App. 3d 897, 901 (1993) (citing *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). The parties agree, however, that because the facts are uncontested, the issues of whether the immunities provided by the various statutes raised in this case are questions of law, and questions of law are reviewed *de novo*. See *City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 633 (1996) (holding that the review of a grant of a directed verdict is *de novo* but recognizing there is some Illinois authority to the contrary); *Jones v. DHR Cambridge Homes, Inc.*, 381 Ill. App. 3d 18, 28 (2008) (" 'The grant or denial of a motion for [a] directed verdict is reviewed *de novo*' " (quoting *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 460 (2004))). Thus, our review is *de novo*. See *Geisler v. City of Wood River*, 383 Ill. App. 3d 828, 839 (2008) ("Because this issue involves statutory *** interpretation and there is no question of fact to be resolved, we review the circuit court's resolution of this issue *de novo*").

5

We begin by giving a brief history and overview of the Recreational Use Act, the Sports Volunteer Act, and the Baseball Facility Act. In 1965, our legislature enacted the Recreational Use Act (Ill. Rev. Stat. 1965, ch. 70, par. 31 *et seq.* (now see 745 ILCS 65/1 *et seq.* (West 2002))). The stated purpose of the Recreational Use Act was "to encourage owners of land to make land and water areas available to the public for recreational or conservation purposes by limiting their liability toward persons entering thereon for such purposes." 745 ILCS 65/1 (West 2002). "The Act is sweeping in its scope, immunizing a landowner from negligence liability with respect to any person who enters the landowner's property for, among other things, 'exercise, education, relaxation, or pleasure.' " *Hall v. Henn*, 208 Ill. 2d 325, 331 (2003) (quoting 745 ILCS 65/2(c), 3, 4 (West 2002)). " 'Exercise, education, relaxation, or pleasure' encompasses just about every purpose, absent commerce, for which a person is invited onto another's property." *Hall*, 208 Ill. 2d at 331. Under the Recreational Use Act, owners, which are defined to include "the possessor of any interest in land, whether it be a tenant, lessee, occupant, the State of Illinois and its political subdivisions, or person in control of the premises" (745 ILCS 65/2(b) (West 2002)), are only liable under two circumstances: (1) "[f]or willful and wanton failure to guard or warn against a dangerous condition, use, structure, or activity" or (2) for any injury "where the owner of land charges the person or persons who enter or go on the land for" recreational use (745 ILCS 65/6 (West 2002)). "Willful and wanton" is not defined under the Recreational Use Act, but "charge" is defined. "Charge" means an admission fee for permission to go upon the land, but it does not include, *inter alia*, "benefits to or arising from the recreational use" or "contributions in kind, services[,] or cash made for the purpose of properly conserving the land." 745 ILCS 65/2(d) (West 2002).

In 1987, our legislature enacted the Sports Volunteer Act (Ill. Rev. Stat. 1987, ch. 70, par. 701 (now see 745 ILCS 80/0.01 *et seq.* (West 2002))). Under the Sports Volunteer Act,

unpaid volunteers who render services to the sports program of a nonprofit association are immunized from negligence liability "unless it is shown that such person did an act or omitted the doing of an act which such person was under a recognized duty to another to do, knowing or having reason to know that such act or omission created a substantial risk of actual harm to the person or property of another." 745 ILCS 80/1(a) (West 2002). While protecting individual unpaid volunteers from liability for ordinary acts of negligence, the Sports Volunteer Act does not "bar any cause of action against a nonprofit association or change the liability of such an association which arises out of an act or omission of any person exempt from liability under this Act." 745 ILCS 80/1(e) (West 2002).

In 1992, two cases, *Coronel v. Chicago White Sox, Ltd.*, 230 Ill. App. 3d 734 (1992), and *Yates v. Chicago National League Ball Club, Inc.*, 230 Ill. App. 3d 472 (1992), were decided, holding that owners and operators of major league baseball parks owed a duty of reasonable care to protect spectators from injury caused by foul balls, including a duty to construct adequate screening and to warn of the danger. *Coronel*, 230 Ill. App. 3d at 736-37; *Yates*, 230 Ill. App. 3d at 482; see also *Jasper v. Chicago National League Ball Club, Inc.*, 309 Ill. App. 3d 124, 127 (1999). Within six months after these two cases were filed, the legislature enacted the Baseball Facility Act (745 ILCS 38/1 *et seq.* (West Supp. 1993)).

The Baseball Facility Act provides as follows: "The owner or operator of a baseball facility shall not be liable for any injury to the person or property of any person as a result of that person being hit by a ball or bat unless: (1) the person is situated behind a screen, backstop, or similar device at a baseball facility and the screen, backstop, or similar device is defective (in a manner other than in width or height) because of the negligence of the owner or operator of the baseball facility[] or (2) the injury is caused by willful and wanton conduct, in connection with the game of baseball, of the owner or operator or any baseball player, coach[,] or manager employed by the owner or operator." 745 ILCS 38/10 (West

7

2002). "Baseball facility" is defined as "any field, park, stadium, or other facility that is used for the play of baseball," and "baseball" is defined to include "the game of baseball or softball, including practice, regardless of whether it is played on a professional or amateur basis and regardless of whether it is played under an organized or league structure or outside of any structure." 745 ILCS 38/5 (West 2002).

The plaintiff first contends that the fee paid by Cody is sufficient to remove the immunity provided by the Recreational Use Act. At oral argument, the plaintiff conceded that if the Recreational Use Act applies to the Recreation Association, it also applies to Jarrod. As authority, the plaintiff relies on *Phillips v. Community Center Foundation & the Children's Farm*, 238 Ill. App. 3d 505 (1992). The Recreation Association contends, on the other hand, that *Phillips* does not apply and that the trial court was correct in applying *Jacobson v. Waszak*, 293 Ill. App. 3d 151 (1997), to the case at bar. The Recreation Association argues, "Although the minor players were charged a participation fee, that type of fee does not defeat the applicability of the Recreational Use Act." Jarrod contends that because the plaintiff, a spectator, was not charged a fee to attend the game, the immunity provided by the Recreational Use Act applies.

"The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003). "Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it." *Hall*, 208 Ill. 2d at 330. "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Hall*, 208 Ill. 2d at 330. "Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Hall*, 208 Ill. 2d at 330. "Nevertheless, we will presume that the General Assembly did not intend an absurd, inconvenient, or unjust result." *Hall*, 208 Ill. 2d at 330. "The construction of a statute is a

8

question of law that is reviewed *de novo*." *Hall*, 208 Ill. 2d at 330.

In *Phillips*, the plaintiff filed a personal injury action to recover damages for injuries he suffered when he fell from a horse owned by the defendant, a community center, on the defendant's property. The defendant's employee had invited the plaintiff to ride a horse. While riding, a cinch strap broke, and the plaintiff was injured when he was thrown from the horse. The defendant's horses were used mainly for the summer camp program offered by the defendant, and the general public was not allowed to ride the horses. The defendant maintained that it was shielded from liability by the Recreational Use Act. The trial court entered a summary judgment in favor of the defendant community center. On appeal, the plaintiff argued, *inter alia*, that the Recreational Use Act was not applicable because the defendant charged a fee to its users. The defendant countered by arguing that the exception was not applicable because the plaintiff himself was not charged a fee.

In analyzing this issue, the court acknowledged that there was precedent for the defendant's position. *Phillips*, 238 Ill. App. 3d at 517. Nevertheless, the court ruled in favor of the plaintiff, stating, "We do not believe there is any legislative purpose or public policy to be served by making a distinction between paying and nonpaying users of the defendant's property." *Phillips*, 238 Ill. App. 3d at 517. Thus, the court concluded that the defendant could not invoke the protection of the Recreational Use Act. *Phillips*, 238 Ill. App. 3d at 517.

In *Jacobson v. Waszak*, 293 Ill. App. 3d 151 (1997), the plaintiff filed a complaint against the defendants after the plaintiff was injured when he was thrown from his snowmobile upon striking a frozen mound of snow at the end of a lane at a "great" speed. The plaintiff alleged that the defendants were negligent in creating a snowmobile racing track by plowing snow from the frozen surface of a nearby lake and in marking the lanes by the placement of cones. The trial court granted a summary judgment in favor of the defendants,

9

concluding that the defendants were immunized from suit by section 5–1(I) of the Snowmobile Registration and Safety Act (Snowmobile Act) (625 ILCS 40/5–1(I) (West 1992)) and section 4 of the Recreational Use Act (745 ILCS 65/4 (West 1992)). *Jacobson*, 293 Ill. App. 3d at 152. On appeal, the plaintiff argued that the trial court erred in determining that the immunities applied to the defendants because the immunity statutes did not apply where permission to utilize the property was given in exchange for a fee and the defendants would charge a membership and entry fee prior to participating in the snowmobile drag race held there. *Jacobson*, 293 Ill. App. 3d at 152. The plaintiff conceded that he did not actually pay a fee but nevertheless contended that, where the defendants generally charged a fee, the immunities were inapplicable. *Jacobson*, 293 Ill. App. 3d at 152.

The court disagreed with the plaintiff's argument, declining "to create judicially an exception to the snowmobiling immunity provision for situations where a plaintiff *might have* but did not pay valuable consideration" (emphasis in original) and affirming the trial court's grant of a summary judgment based upon the defendant's immunity under the Snowmobile Act. *Jacobson*, 293 Ill. App. 3d at 156. The court declined to decide whether the defendants were also shielded under the broader provisions of the Recreational Use Act. *Jacobson*, 293 Ill. App. 3d at 156. In rendering its decision, the court set forth section 5–(1)(I) of the Snowmobile Act, which shielded the defendants from a negligence suit by the plaintiff unless (1) permission to snowmobile was given for valuable consideration or (2) the defendant willfully or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity. *Jacobson*, 293 Ill. App. 3d at 154 (relying on 625 ILCS 40/5–1(I) (West 1992)). The court noted, "We believe the legislature may properly allocate tort liability based on its determination that some parties are more capable than others of assuming the financial risks involved in providing premises for recreational purposes–such as those who profit directly from the recreational use of the premises or have financial

10

incentives to improve the property for that purpose." *Jacobson*, 293 Ill. App. 3d at 155. The court then stated, "We do not concur with the *Phillips* court's reservations concerning the wisdom of the legislature in this regard, where the court stated: 'We do not believe there is any legislative purpose or public policy to be served by making a distinction between paying and nonpaying users of the defendant's property.' " *Jacobson*, 293 Ill. App. 3d at 155 (quoting *Phillips*, 238 Ill. App. 3d at 517).

Here, we find that giving the statutory language its plain and ordinary meaning, the immunities provided under the Recreational Use Act apply. Section 3 provides as follows: "Except as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes[] or to give any warning of a natural or artificial condition, use, structure, or activity on such premises to persons entering for such purposes." 745 ILCS 65/3 (West 2002). An "owner" is defined to include, *inter alia*, a "lessee" or the "person in control of the premises." 745 ILCS 65/2(b) (West 2002). Here, the Recreation Association was a lessee and was in control of the premises under the terms of its agreement with the Park District. " 'Recreational *** purpose' means any activity undertaken for *** exercise, education, relaxation, or pleasure on land owned by another." 745 ILCS 65/2(c) (West 2002). Certainly the game of baseball falls within the meaning of an activity undertaken for exercise or pleasure, and watching the game of baseball is an activity undertaken for relaxation or pleasure. Thus, under a plain reading of the statute, the Recreation Association owed "no duty of care to keep the premises safe for entry or use by any person for recreational *** purposes[] or to give any warning of a *** use *** or activity on such premises to persons entering for such purposes," unless provided in section 6 of the Recreational Use Act. 745 ILCS 65/3 (West 2002).

As we noted earlier, pursuant to section 6 of the Recreational Use Act, the

11

Recreational Use Act does provide for liability under two circumstances: (1) "[f]or willful and wanton failure to guard or warn against a dangerous condition, use, structure, or activity" or (2) for any injury "where the owner of land charges the person or persons who enter or go on the land for" recreational use. 745 ILCS 65/6 (West 2002). Here, the plaintiff has not appealed the dismissal of her counts alleging willful and wanton conduct. Thus, the only exception that could apply to immunity would be for any injury where the owner charges the person or persons who enter or go on the land for recreational use.

"Charge" is defined under the Recreational Use Act to mean "an admission fee for permission to go upon the land[] but does not include: *** benefits to or arising from the recreational use[] or contributions in kind, services[,] or cash made for the purpose of properly conserving the land." 745 ILCS 65/2(d) (West 2002). Here, the evidence established that the Recreation Association was a not-for-profit corporation that ran and organized summer baseball leagues for the youth in West Frankfort through unpaid volunteers. Under the agreement that the Recreation Association had with the Park District, the Recreation Association agreed not to charge an admission fee to spectators, unless there was tournament play. The evidence in the record, however, established that the Recreation Association never charged spectators an admission fee and did not charge a fee with regard to the game at issue. The plaintiff was a spectator and like everyone else could enter upon the land free of charge. Thus, the Recreation Association was immune under the Recreational Use Act.

Our reading of the Recreational Use Act leads us to believe that the legislature was not trying to throw a curve ball with regard to its intent, but rather we think its objective was thrown right down the pipe: "The purpose of this Act is to encourage owners of land to make land *** available to the public for recreational *** purposes by limiting their liability toward persons entering thereon for such purposes." 745 ILCS 65/1 (West 2002).

12

Furthermore, the fee charged to Cody to play in the league is not the type of fee the Recreational Use Act refers to in removing the immunity provided by the Recreational Use Act. Here, the evidence established that Cody, like all the other players in the various leagues, paid a $35 sign-up fee to play in the league. This money could have been used to pay for the electricity, the $100 yearly rent to lease the baseball fields, or the fences, dugouts, scorers' booths, or light poles that the Recreation Association paid for and constructed over the years. Furthermore, the money could have been used to pay for the shirts and equipment that the players used. The players were not charged an admission to come onto the land; rather, they were charged an admission to play in the baseball league. This is not the type of charge that would remove the immunity under the Recreational Use Act. See *Hoye v. Illinois Power Co.*, 269 Ill. App. 3d 597, 602 (1995) ("As used in the Recreational Use Act, 'charge' means an admission fee to go upon the land. [Citation.] This does not include incidental charges for refreshments or other services while on the land. Under the allegations of the complaint, it is possible that a person who put his boat into the lake in the morning and took it out in the afternoon would not have to pay a fee"). If anything, this charge is more properly described as "cash made for the purpose of properly conserving the land," which is specifically excluded from the definition of "charge" under the Recreational Use Act. 745 ILCS 65/2(d) (West 2002).

As far as the applicability of *Phillips* and *Jacobson* is concerned, we agree with the court in *Jacobson* that "the legislature may properly allocate tort liability based upon its determination that some parties are more capable than others of assuming the financial risks involved in providing premises for recreational purposes–such as those who profit directly from the recreational use of the premises or have financial incentives to improve the property for that purpose." *Jacobson*, 293 Ill. App. 3d at 155. We do see a distinction between owners who gratuitously allow their property to be used for recreational purposes and those

13

who do so for a profit.  Obviously, the legislature did as well.

The plaintiff also argues, "A review of reported cases divulges that there are absolutely none where the immunity of [the Recreational Use Act] has been raised for baseball games or other organized sports."  While we could not find any cases in our research where the Recreational Use Act directly applied to the game of baseball, we did find reference to it, and we hold that the game of baseball is a recreational activity under the Recreational Use Act.  See *Fraser v. Universities Research Ass'n*, 188 Ill. 2d 444, 453 (1999) (providing as an example an owner of land allowing a parcel of his property to be used exclusively as a baseball diamond for the benefit of his community to illustrate why immunity should apply under the Recreational Use Act).

The plaintiff next argues that even if the Recreational Use Act is applicable, it does not apply to all the allegations of negligence because the immunity provided by the Recreational Use Act only applies to claims involving "premise liability" or the "failure to warn."  We disagree.

Section 3 provides that, subject to section 6, *i.e.*, willful and wanton conduct or charging a fee, "an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational *** purposes[] or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes."  745 ILCS 65/3 (West 2002).  Further, section 4 states that, subject to section 6, "an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational *** purposes does not thereby: *** (c) [a]ssume responsibility for or incur liability for any injury to person or property caused by an act or omission of such person or any other person who enters upon the land."  745 ILCS 65/4(c) (West 2002).  Reading these two provisions together along with the rest of the Recreational Use Act as we must, it is clear to us that the legislature intended the

14

Recreational Use Act to provide immunity for all acts of negligence subject to the two exceptions provided in section 6. But see *Phillips*, 238 Ill. App. 3d at 517-18 (noting its own reservations with regard to the Recreational Use Act's applicability because the statute deals with premise liability, and the defendant's negligence was based upon its failure, after notice, to replace or repair the defective cinch strap). In fact, the supreme court has stated, "The Act is sweeping in its scope, immunizing a landowner from negligence liability with respect to any person who enters the landowner's property for, among other things, 'exercise, education, relaxation, or pleasure.' " *Hall*, 208 Ill. 2d at 331 (quoting 745 ILCS 65/2(c), 3, 4 (West 2002)).

Although moot, because of our finding that the protections provided by the Recreational Use Act apply to the Recreation Association and Jarrod (as conceded by the plaintiff), we briefly consider the respective defendants' cross-appeals. Jarrod cross-appeals, contending that the trial court erred in ruling that he was not immune under the Sports Volunteer Act. We disagree. The Sports Volunteer Act applies to unpaid volunteers who render services as a "manager, coach, instructor, umpire[,] or referee" or to those who assist those volunteers occupying those positions in a sports program for a nonprofit association. 745 ILCS 80/1 (West 2002). The undisputed evidence at the trial established, however, that when this accident occurred Jarrod was a spectator at the game and had not yet begun coaching his team. Jarrod had merely arrived at the baseball field and had begun watching the game that was being played. He had not called his team together or taken any action in regard to his position as coach. Thus, the Sports Volunteer Act is not applicable to the case at hand.

The Recreation Association cross-appeals, contending that the immunity provided by the Baseball Facility Act applies to it. We agree. As stated above, the Baseball Facility Act provides as follows: "The owner or operator of a baseball facility shall not be liable for any

15

injury to the person or property of any person as a result of that person being hit by a ball or bat unless: (1) the person is situated behind a screen, backstop, or similar device at a baseball facility and the screen, backstop, or similar device is defective (in a manner other than in width or height) because of the negligence of the owner or operator of the baseball facility[] or (2) the injury is caused by willful and wanton conduct, in connection with the game of baseball, of the owner or operator or any baseball player, coach[,] or manager employed by the owner or operator."  745 ILCS 38/10 (West 2002).  "The Baseball [Facility] Act encourages use of parks for a recreational activity in a way that is not arbitrary, capricious, or unreasonable." *Jasper*, 309 Ill. App. 3d at 127; see *Maloney v. Elmhurst Park District*, 47 Ill. 2d 367, 370 (1970) (approving of limiting liability as a way to encourage the development and maintenance of parks for recreational purposes).

Here, it is undisputed that the Recreation Association was the operator of the baseball field at issue, which is a baseball facility as that term is used in the Baseball Facility Act.  See 745 ILCS 38/5 (West 2002).  It also undisputed that the plaintiff was injured as a result of being hit by a ball and that the plaintiff was not situated behind a screen, backstop, or similar device at a baseball facility; rather, the plaintiff was in the bleachers situated along the third-base line.  At issue is whether the plaintiff was injured by the playing of baseball.

"Baseball" is defined in the Baseball Facility Act to include "the game of baseball or softball, including practice, regardless of whether it is played on a professional or amateur basis and regardless of whether it is played under an organized or league structure or outside of any structure."  745 ILCS 38/5 (West 2002).  At the trial, Cody testified that he and his teammate were warming up for the next game by playing catch.  We think this falls within the definition of "baseball" as it is defined under the Baseball Facility Act.  Moreover, the definition specifically includes "practice, regardless of whether it is played on a professional or amateur basis and regardless of whether it is played under an organized or league structure

16

or outside of any structure." 745 ILCS 38/5 (West 2002). The evidence presented here establishes that Cody was practicing or "warming up" prior to the start of his game, which happened to be in an organized amateur league structure. The trial judge reasoned that the Baseball Facility Act could not apply because the ball was not thrown from the baseball field. We find, however, that the legislature did not intend for the Baseball Facility Act to be this narrow. The fact of the matter is that in this league, and surely in others like it, due to the limited number of facilities, players often have to practice or warm up in places other than the actual baseball field itself. In fact, the testimony in this case established that every team warmed up in different areas of the park. While it is undisputed that the area Cody chose to warm up was an unsafe place to do so, it did not rise to the level of "willful and wanton conduct," and the immunity provided by the Baseball Facility Act applies to the Recreation Association. See 745 ILCS 38/10 (West 2002). Indeed, a "baseball facility" is defined broadly to include "any field, park, stadium, or other facility that is used for the play of baseball." 745 ILCS 38/5 (West 2002). Cody was warming up in the park behind the dugout near the baseball field. Under those facts, we find that the trial court erred in ruling that the Recreation Association was not immune from liability under the Baseball Facility Act. Nevertheless, because this issue and Jarrod's cross-appeal are moot as a result of our finding that the Recreational Use Act provides immunity to the defendants, we affirm the trial court's directed verdict in favor of the Recreation Association and Jarrod based upon the Recreational Use Act.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Franklin County circuit court.


Affirmed.

17

GOLDENHERSH, P.J., and STEWART, J., concur.

NO. 5-09-0213

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| DEBBIE J. VAUGHN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and | ) | Franklin County. |
| Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06-L-29 |
| | ) | |
| JARROD BARTON and WEST FRANKFORT | ) | |
| RECREATION ASSOCIATION, | ) | |
| | ) | Honorable |
| Defendants-Appellees and | ) | Leo T. Desmond, |
| Cross-Appellants. | ) | Judge, presiding. |

---

**Opinion Filed**: July 8, 2010

---

**Justices**: Honorable James M. Wexstten, J.,

Honorable Richard P. Goldenhersh, P.J.,
Honorable Bruce D. Stewart, J.,
Concur

---

**Attorney for Appellant**

William A. Alexander, Sam C. Mitchell & Associates, 115 East Main Street, P.O. Box 280, West Frankfort, IL 62896

---

**Attorneys for Appellees**

Daniel R. Price, Wham & Wham, 212 East Broadway, P.O. Box 549, Centralia, IL 62801 (attorney for Jarrod Barton); Kelly Ray Phelps, Jelliffe, Ferrell, Doerge & Phelps, 108 East Walnut Street, P.O. Box 406, Harrisburg, IL 62946 (attorney for West Frankfort Recreation Association)